Filed 6/28/17; pub. & mod. order 7/28/17 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| BEACHCOMBER MANAGEMENT CRYSTAL COVE, LLC, et al., | |
| Petitioners, | |
| v. | G054078 |
| | (Super. Ct. No. 30-2016-00839339) |
| THE SUPERIOR COURT OF ORANGE COUNTY, | O P I N I O N |
| Respondent; | |
| DOUGLAS L. SALISBURY, as Trustee, etc., et al., | |
| Real Party in Interest. | |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Martha K. Gooding, Judge. Petition granted.

Kohut & Kohut, Ronald J. Kohut, Laura Kohut Hoopis and Kristyn E. Kohut for Petitioners.

No appearance for Respondent.

Weibtraub | Tobin, Gary A. Waldron, Sherry S. Bragg and Darrell P. White for Real Parties in Interest.

*     *     *

Defendants Beachcomber Management Crystal Cove, LLC (Management) and Douglas Cavanaugh (collectively, Defendants) challenge the trial court's order disqualifying the law firm of Kohut & Kohut LLP (Kohut) from continuing to represent Defendants in the underlying matter. Plaintiffs Douglas L. Salisbury, as trustee of the DLS Living Trust, Philip de Carion, and Gina de Carion (collectively, Plaintiffs) brought this derivative lawsuit on behalf of Beachcomber at Crystal Cove, LLC (Company) to challenge various actions Defendants took as the sole managing member of the Company.

The duty of confidentiality generally prevents an attorney from continuing to represent a client if the representation conflicts with the attorney's representation of a previous client in a related matter. Once the previous client establishes a substantial relationship between the successive representations, the court must disqualify the attorney from continuing to represent the second client because the law presumes the attorney received confidential information during the first representation that is relevant to the second.

Here, the trial court concluded disqualification was mandatory based on its findings that (1) Defendants and the Company have conflicting interests because the Company is the true plaintiff in this derivative suit that Plaintiffs brought against Defendants on the Company's behalf, and (2) Kohut previously represented the Company concerning some of the issues raised in this suit, and a substantial relationship

2

therefore exists between that representation and Kohut's representation of Defendants in this lawsuit.

We conclude the trial court erred because it failed to apply a more specific line of cases that governs an attorney's successive representation of clients in a derivative lawsuit brought on a small or closely held company's behalf against the insiders who run the company. Under these cases, an attorney may represent the insiders in a derivative lawsuit by the company despite the attorney's previous representation of the company regarding issues raised in the suit. Unlike the ordinary successive representation case, these cases recognize the attorney's representation of the insiders does not threaten the attorney's duty of confidentiality to the company because the insiders already are privy to all of the company's confidential information. Indeed, any attorney representing the insiders would discover the company's confidential information because the insiders are the source of that information.

Plaintiffs contend these cases do not apply here because the evidence shows Defendants were neither solely in charge of the Company's operations nor the sole repositories of its confidential information. Plaintiffs, however, misconstrue the underlying rationale of these cases. The critical inquiry is not whether the insiders were solely in charge or the sole repositories of the company's confidential information. Rather, the critical inquiry is whether the insiders possessed or had access to the same confidential information as the attorney who previously represented the company.

The trial court made no findings regarding this critical question, and therefore we grant the petition and issue a writ of mandate directing the court to (1) vacate its order disqualifying Kohut; (2) determine whether the reasoning in these cases permits Kohut to continue representing Defendants in the lawsuit; (3) determine whether the additional grounds Plaintiffs raised in their motion support disqualification; and (4) enter a new order on Plaintiffs' disqualification motion.

3

I

FACTS AND PROCEDURAL HISTORY

In 2006, Management founded the Beachcomber Café at Crystal Cove, which the Company owns. The Company is a limited liability company and Management serves as its managing member with the exclusive right to operate its business. The Company has five other members who invested in it, but have no right to participate in the day-to-day operations. These members are Plaintiffs and nonparties Ralph Kosmides, Edward and Janis Carpenter, and Michael Hoopis. Management is a limited liability company and Cavanaugh is its managing member with the exclusive right to manage the Company.

Cavanaugh also operates and owns an interest in several other restaurants and food service entities, including Ruby's Diner, Inc., Ruby's Franchise Systems, Inc., Ruby's Management, LLC, Ruby's Retail Brands, LLC, Lighthouse Café, and Malibu Restaurant Group, LLP. Salisbury is an investor in some of these entities, and he has a long history of questioning Cavanaugh's actions in managing the Company and these other entities. In 2009, Cavanaugh hired Kohut to represent him and certain of the Ruby's Diner entities regarding Salisbury's numerous requests for information and challenges to Cavanaugh's management. Kohut's representation included defending some of the Ruby's Diner entities and Cavanaugh in a lawsuit Salisbury filed entitled *Salisbury v. Ruby's Diner* (Super. Ct. Orange County, 2011, No. 30-2011-00510153).

In 2011, Management hired Kohut to represent it regarding Salisbury's requests for information and challenges to Cavanaugh's management of the Company. Since 2011, Kohut regularly corresponded with Salisbury and his counsel about Cavanaugh's management of the Company.

It is undisputed Kohut also has represented the Company twice. First, between April 2010 and November 2011, Kohut represented the Company, Management,

4

and some investors when served with subpoenas in an unrelated lawsuit entitled *DeCinces v. Ruby's Diner, Inc.* (Super. Ct. Orange County, 2009, No. 30-2009-00124231). Second, during September and October 2010, Kohut advised the Company about a former employee's wrongful termination lawsuit, but the Company's insurance carrier hired a different counsel to represent the Company in that lawsuit.

Defendants assert these are the only occasions Kohut represented the Company, and those representations ended by late 2011. The trial court, however, found Kohut also represented the Company along with Defendants relating to Salisbury's inquiries and objections to Cavanaugh's management of the Company before Plaintiffs filed this lawsuit.

In March 2016, Plaintiffs filed this lawsuit on the Company's behalf as a shareholder derivative action against Defendants. The complaint named the Company as a nominal defendant and alleged claims for fraud, breach of fiduciary duty, abuse of control, gross negligence and mismanagement, breach of duty of honest services, unjust enrichment, declaratory relief, and accounting. Plaintiffs allege Defendants abused their position as the Company's managers by diverting Company funds to other Cavanaugh entities, paying themselves unauthorized management fees, misallocating expenses the Company shares with other entities, and refusing to provide Plaintiffs complete access to the Company's books and records. Defendants hired Kohut to represent them in this lawsuit, and the Company hired independent counsel, the law firm of Corbin, Steelman & Specter, to represent it in this lawsuit.

In May 2016, Plaintiffs filed a motion to disqualify Kohut "from any further participation in this case" based on conflicts of interests arising from its past and present representation of the Company and Defendants. Specifically, Plaintiffs argued disqualification was required based on the conflicts of interest arising from (1) Kohut's concurrent representation of the Company and Defendants; (2) Kohut's successive representation of the Company and Defendants concerning the disputes over the

5

Company's operations; and (3) the need for Kohut to testify in this lawsuit about the services it provided to the Company and Defendants.

Defendants opposed the motion, arguing (1) there is no concurrent representation because Kohut does not represent the Company in this lawsuit and has not represented the Company in any other matter since late 2011; (2) Kohut's successive representation of the Company and Defendants does not require disqualification because no substantial relationship exists between the firm's prior representation of the Company and this lawsuit, and the successive representation rules allow an attorney to continue representing a company's insiders in a derivative lawsuit so long as the attorney does not continue to represent the company; (3) Kohut will not be a witness in this matter on any issue other than the value of its services, and that testimony is an express exception to the rule prohibiting an attorney from being an advocate and a witness in the same lawsuit; and (4) the Company waived any potential or actual conflict of interest arising from Kohut's previous or current representation of any party to this action.

The trial court granted the motion in August 2016. The court found the conflict of interest arising from Kohut's successive representation of the Company and Defendants required the firm's disqualification. The court explained a substantial relationship existed between Kohut's prior representation of the Company and its current representation of Defendants because the two representations involved many of the same issues concerning the Company's management raised by Plaintiffs in this lawsuit. According to the court, two letters Kohut sent to Salisbury's counsel in October 2015 showed the firm represented both the Company and Defendants regarding Plaintiffs' complaints. Moreover, a declaration Defendants submitted from Tad Belshe, the Company's Vice President of Operations, confirmed Kohut had jointly represented the Company and Defendants regarding Salisbury's complaints. The court also found the conflict waiver the Defendants submitted was ineffective because Defendants failed to show a disinterested decision maker authorized the waiver. In granting the motion, the

6

court exclusively relied on Kohut's successive representation of the Company and Defendants; the court did not address Plaintiffs' arguments based on the concurrent representation or witness-advocate rules.

At the same time it granted the disqualification motion, the trial court sustained Defendants' demurrer to the declaratory relief claim with leave to amend because Plaintiffs brought an individual claim regarding Salisbury's voting rights, not a derivative claim alleging injury to the Company. The court overruled the demurrer to all other claims because it found they were derivative claims. Plaintiffs thereafter filed an amended complaint confirming that Salisbury sought declaratory relief as an individual claim and all other claims were brought on the Company's behalf. Based on the amended complaint, Defendants filed a motion asking the court to reconsider its ruling on the disqualification motion, and allow Kohut to remain as counsel on the declaratory relief claim because the Company was not a party to that claim and therefore no conflict of interest existed. The court denied the motion for reconsideration, but stayed the lawsuit to allow Defendants to seek appellate review of the disqualification order.

In September 2016, Defendants filed this writ petition seeking a writ of mandate compelling the trial court to vacate its order disqualifying Kohut and enter a new order denying the motion to disqualify. Alternatively, Defendants sought a writ of mandate compelling the trial court to vacate its order denying their motion for reconsideration and enter a new order granting reconsideration. We issued an order to show cause why a writ of mandate should not issue.

## II

### DISCUSSION

A.  *Legal Background on Attorney Disqualification*

"A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial

7

officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.'" (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 (*SpeeDee Oil*); see Code Civ. Proc., § 128, subd. (a)(5).)

"Disqualification motions implicate competing considerations. On the one hand, these include clients' rights to be represented by their preferred counsel and deterring costly and time-consuming gamesmanship by the other side. '[T]he client has an interest in competent representation by an attorney of his or her choice [citations] and perhaps, the interest in avoiding inconvenience and duplicative expense in replacing counsel already thoroughly familiar with the case.'" (*Banning Ranch Conservancy v. Superior Court* (2011) 193 Cal.App.4th 903, 911 (*Banning Ranch*); see *SpeeDee Oil*, *supra*, 20 Cal.4th at pp. 1144-1145.)

"Balanced against these are attorneys' duties of loyalty and confidentiality and maintaining public confidence in the integrity of the legal process. 'The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process.' [Citation.] 'The loyalty the attorney owes one client cannot be allowed to compromise the duty owed another.'" (*Banning Ranch*, *supra*, 193 Cal.App.4th at p. 911; see *SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1145.)

"'"'A conflict of interest exists when a lawyer's duty on behalf of one client obligates the lawyer to take action prejudicial to the interests of another client; i.e., 'when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.'"'" (*Coldren v. Hart, King & Coldren, Inc.* (2015) 239 Cal.App.4th 237, 248, italics omitted.) "California courts have identified two separate categories in which actual or potential conflicts of interest arise in counsel's representation of multiple clients. One is the successive representation of multiple clients resulting in a conflict of interest, i.e., where the attorney's representation of the current client may conflict with the interests of a former client . . . . Under those circumstances,

8

'the courts have recognized that the chief fiduciary value jeopardized is that of client *confidentiality*.' [Citation.] The other circumstance is the concurrent (or dual) representation of multiple clients resulting in a conflict of interest . . . , in which '[t]he primary value at stake . . . is the attorney's duty—and the client's legitimate expectation—of *loyalty*, rather than confidentiality.'"[1] (*M'Guinness v. Johnson* (2015) 243 Cal.App.4th 602, 613 (*M'Guinness*).) "'Normally, an attorney's conflict is imputed to the law firm as a whole on the rationale "that attorneys, working together and practicing law in a professional association, share each other's, and their clients', confidential information."'" (*Id*. at p. 614.)

"In successive representation cases, where the former client seeks to disqualify counsel from representing a successive client in current litigation adverse to the former client's interest, the former client must 'demonstrate a "*substantial relationship*" between the subjects of the antecedent and current representations.' [Citation.] A substantial relationship exists where 'the attorney had a direct professional relationship with the former client in which the attorney personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation.'" (*M'Guinness*, *supra*, 243 Cal.App.4th at p. 614.) "'Where the requisite substantial relationship between the subjects of the prior and the current representations

---

[1]     Rule 3-310 of the Rules of Professional Conduct governs an attorney's representation of clients with interests that actually or potentially conflict. In pertinent part, the rule provides: "(C) A member shall not, without the informed written consent of each client: [¶] (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or [¶] (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or [¶] (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter. [¶] . . . [¶] (E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

9

can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory . . . .'" (*Ontiveros v. Constable* (2016) 245 Cal.App.4th 686, 696 (*Ontiveros*).)

"In instances of concurrent representation, '[b]ecause a conflict involving an attorney's duty of loyalty is "[t]he most egregious" kind of conflict,' a '"more stringent"' test is applied. [Citation.] Even if the dual representations 'may have *nothing* in common, and there is *no* risk that confidences to which counsel is a party in the one case have any relation to the other matter, disqualification may nevertheless be *required*. Indeed, in all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or "automatic" one. [Citations.]' [Citations.] This *per se* rule is appropriate because '[a] client who learns that his or her lawyer is also representing a litigation adversary, even with respect to a matter *wholly unrelated* to the one for which counsel was retained, cannot long be expected to sustain the level of confidence and trust in counsel that is one of the foundations of the professional relationship.'" (*M'Guinness*, *supra*, 243 Cal.App.4th at pp. 614-615.) "The strict proscription against dual representation of clients with adverse interests thus derives from a concern with protecting the integrity of the attorney-client relationship rather than from concerns with the risk of specific acts of disloyalty or diminution of the quality of the attorney's representation." (*Forrest v. Baeza* (1997) 58 Cal.App.4th 65, 74 (*Forrest*).)

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's discretion is limited by the applicable legal principles. [Citation.] Thus, where there are

10

no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion." (*SpeeDee Oil*, *supra*, 20 Cal.4th at pp. 1143-1144; see *Ontiveros*, *supra*, 245 Cal.App.4th at p. 696.)

B.     *The Trial Court Failed to Apply the Proper Legal Standards for Evaluating Successive Representations Involving a Shareholder Derivative Lawsuit*

Defendants contend the trial court erred in disqualifying Kohut based on the general prohibition against successive representations when the two representations are substantially related. According to Defendants, the court failed to apply controlling authority that allows an attorney who previously represented both a closely held company and its insiders to continue representing the insiders in a derivative lawsuit brought on the company's behalf against the insiders. We agree.

A corporate shareholder or member in a limited liability company may bring a derivative lawsuit on the company's behalf when the insiders who control the company refuse to do so. The shareholder or member bringing the derivative lawsuit is the plaintiff in name only because the lawsuit seeks redress for injury the company suffered and any recovery belongs to the company. Hence, although the company is named as a nominal defendant based on the insiders' refusal to bring the lawsuit on the company's behalf, the company is the true plaintiff. (*Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995, 1003-1004; see *Blue Water Sunset, LLC v. Markowitz* (2011) 192 Cal.App.4th 477, 489 (*Blue Water*) [applying corporate derivative action principles to limited liability company].)

The company's status as the true plaintiff prevents an attorney from representing both the company and its insiders in a derivative lawsuit that alleges the insiders breached their duties owed to the company or otherwise injured the company. Such representation would be an impermissible concurrent representation of clients with

11

conflicting interests.  (*Ontiveros*, *supra*, 245 Cal.App.4th at p. 696 ["'Current case law clearly forbids dual representation of a corporation and directors in a shareholder derivative suit, at least where, as here, the directors are alleged to have committed fraud'"]; see *Forrest*, *supra*, 58 Cal.App.4th at p. 74.)

Successive representation rules, however, generally do not prevent an attorney from continuing to represent the insiders in a derivative lawsuit even though a substantial relationship exists between the attorney's previous representation of the company and the attorney's current representation of the insiders in the company's lawsuit against them.  (*Forrest*, *supra*, 58 Cal.App.4th at pp. 80, 82; see *Ontiveros*, *supra*, 245 Cal.App.4th at pp. 699-700; *Blue Water*, *supra*, 192 Cal.App.4th at pp. 490-491; *Gong v. RFG Oil, Inc.* (2008) 166 Cal.App.4th 209, 217 (*Gong*).)  This separate rule for derivative lawsuits derives from a recognition that the insiders are the true sources and possessors of a closely held company's confidential information.  (*Forrest*, at p. 82; see *Ontiveros*, at pp. 699-700; *Blue Water*, at p. 491; *Gong*, at p. 217.)

As explained above, client confidentiality is the fiduciary value threatened by an attorney's successive representation of separate clients in substantially related matters.  (*M'Guinness*, *supra*, 243 Cal.App.4th at p. 613; *Forrest*, *supra*, 58 Cal.App.4th at p. 73.)  Once a substantial relationship between the two representations is shown, courts must presume the attorney received confidential information during the first representation and the attorney's disqualification in the second representation is mandatory.  (*Ontiveros*, *supra*, 245 Cal.App.4th at pp. 695-696.)  This rule "is based on the need to protect scrupulously against the improper use of confidential information[.] '"This is the rule by necessity, for it is not within the power of the former client to prove what is in the mind of the attorney.  Nor should the attorney have to 'engage in a subtle evaluation of the extent to which he acquired relevant information in the first representation and of the actual use of that knowledge and information in the subsequent representation.'"'"  (*Forrest*, at p. 82.)

12

In a small or closely held company, the functioning of the company and its insiders typically are so intertwined that any distinction between the company and its insiders is entirely fictional.  The insiders are the repositories and source of all confidential information an attorney may receive in representing the company.  In a larger company confidential information may be divided among many different people with no individual or small group possessing it all, but in a closely held company the few insiders responsible for operating a small company often know all of the company's confidential information.  In that situation, it would be meaningless to apply the successive representation rules to prevent an attorney who previously represented the company from representing the company's insiders.  (*Forrest*, *supra*, 58 Cal.App.4th at p. 82; see *Ontiveros*, *supra*, 245 Cal.App.4th at pp. 699-700; *Blue Water*, *supra*, 192 Cal.App.4th at p. 491; *Gong*, *supra*, 166 Cal.App.4th at p. 217.)  As the repositories and source of the company's confidential information, the insiders would be able to provide their new attorney with the same information their previous attorney had, and therefore disqualifying the original attorney would be a futile act that merely generates attorney fees as the new attorney gets up to speed.  (*Gong*, at p. 217.)  Indeed, in this scenario, "[c]ounsel's continued representation of the [insiders] poses no threat to [c]ounsel's continuing duty of confidentiality to [the company]" because the insiders already know all of the Company's confidential information.  (*Ontiveros*, *supra*, 245 Cal.App.4th at p. 700, italics omitted.)

For example, *Forrest* involved a shareholder derivative suit brought by a minority shareholder in two closely held corporations against a husband and wife who were the majority shareholders and ran the corporations.  The minority shareholder brought a motion to disqualify the attorney who represented both the corporations and the majority shareholders in the lawsuit.  The trial court granted the motion to disqualify the attorney from representing the corporations, but denied the motion to disqualify the

13

attorney from representing the majority shareholders.  (*Forrest*, *supra*, 58 Cal.App.4th at pp. 68-72.)  The Court of Appeal affirmed.

The *Forrest* court explained the prohibition on concurrent representation of clients with conflicting interests prohibited the attorney from continuing to represent both the corporations and the majority shareholders because the lawsuit essentially was a claim by the corporations against the majority shareholders.  (*Forrest*, *supra*, 58 Cal.App.4th at p. 74.)  But the appellate court also concluded the prohibition on successive representations in substantially related matters did not require the attorney's disqualification from representing the majority shareholders because the continued representation of those shareholders posed no threat that the attorney would use confidential information he received from the corporations:  "[I]n the factual circumstances of this case, where [the attorney] has been representing a corporation comprised of three shareholders solely by virtue of his relationship with . . . the majority directors/shareholders, it is impossible to conceive of confidential information [the attorney] could have received from the 'corporation' that is different from information he received from the [majority shareholders]."  (*Id*. at p. 82.)  Relying on *Forrest*, the Courts of Appeal reached similar results in *Ontiveros*, *supra*, 245 Cal.App.4th at pp. 699-700, *Blue Water*, *supra*, 192 Cal.App.4th at pp. 490-491, and *Gong*, *supra*, 166 Cal.App.4th at p. 217.)

Here, seven of the eight causes of action Plaintiffs allege are derivative claims brought on the Company's behalf against Defendants for actions Defendants took as the Company's insiders.  Management is the Company's sole managing member with the exclusive right to run the Company and its business.  Cavanaugh is Management's sole managing member with the exclusive right to run Management as it operates the Company.  Indeed, Cavanaugh actively oversees the Company's management and operations.  Kohut has represented both Management and Cavanaugh for a number of years.  Although Defendants dispute that Kohut ever represented the Company regarding

14

any of the claims alleged in this lawsuit, the trial court found the firm represented the Company on at least some of the issues before Plaintiffs filed this lawsuit.[2] It is undisputed Kohut has not represented the Company in this lawsuit and that the Company has hired independent counsel to represent it. These fundamental facts about this lawsuit and the relationship among the parties and Kohut support the conclusion Kohut may continue representing Defendants despite the trial court's finding a substantial relationship existed between the firm's previous representation of the Company and its current representation of Defendants.

Defendants brought these facts to the trial court's attention and relied on the rule established in *Forrest* and its progeny. Nonetheless, the court disqualified Kohut from representing Defendants in this lawsuit based on the general successive representation rule requiring a court to presume confidential information was disclosed during a prior representation if the two representations are substantially related. Although the court issued a lengthy written order explaining its ruling, the court neither acknowledged nor distinguished *Forrest* or any of the foregoing cases.

Plaintiffs argue the *Forrest* line of cases establish a narrow rule inapplicable here because Defendants were not solely in charge of the Company's operations and they are not the sole repositories of the Company's records. According to

---

[2] Defendants contend the trial court erred in finding Kohut represented the Company on issues raised in this lawsuit. According to Defendants, we should review the court's finding on this issue de novo because undisputed evidence shows the court misinterpreted the two letters and the declaration it relied on to establish Kohut's representation of the Company on these matters. Appellate courts, however, independently review factual issues only when the facts are undisputed *and* no conflicting inferences can be drawn from the facts. (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 996 (*Nellie Gail*).) The letters and declaration the court identified are ambiguous and support conflicting inferences. We therefore review the trial court's finding under the substantial evidence standard and conclude the letters and declaration support the court's finding.

Plaintiffs, an attorney who previously represented a corporation may represent a corporate insider in a derivative lawsuit against the insider only "where it is shown that the nature of the relationship between the corporation and the insider is so intertwined that there is no possibility that confidential information of the corporation would be jeopardized." Plaintiffs misconstrue *Forrest* and the basis for the rule it establishes.

The rule established by *Forrest* and applied in subsequent cases supplanted the generally applicable successive representation rule and now governs in derivative lawsuits involving a closely held company in which a limited number of insiders are responsible for the company's operations and possess or are privy to its confidential information. Applying a presumption that requires disqualification based solely on the relationship between the attorney's representation of the company and his or her representation of the insiders makes little sense in that situation because the insiders are the source of the attorney's information, or at least they possess the same information as the attorney, and therefore the attorney's representation of the insiders does not threaten the attorney's duty of confidentiality to the Company.

Although *Forrest* used the terminology "sole repositories of corporate information to which the attorney has had access" (*Forrest*, *supra*, 58 Cal.App.4th at p. 82), that terminology describes the factual scenario *Forrest* presented, not the minimum threshold for the *Forrest* rule to apply. Rather, the critical inquiry focuses on the insiders' role in the company and the information to which they had access and possessed. It does not matter whether the insiders were the "sole repositories" of confidential information or that other employees or representatives also had access or possessed confidential information. Likewise, it is irrelevant that the insiders may have delegated certain tasks or responsibilities to others. Application of the *Forrest* rule turns on whether the insiders had access to the same information as the attorney who represented both the insiders and the company.

16

On appeal, Plaintiffs contend "the evidence does not establish that the operational functions of the [Company] have been so intertwined with [Defendants[3]] that any distinction between them is fictional . . . such that any confidential information possessed by the [Company] is also possessed by [Defendants]." In support, Plaintiffs point to (1) the declaration of Tad Belshe, the Company's Vice President of Operations, and its description of his responsibilities regarding the Company's day-to-day operational issues; (2) the Company's use of outside accountants to prepare and maintain its financial records; and (3) Robert Galle's declaration explaining that Cavanaugh delegated to him the authority to resolve a dispute with the Company's investors about a loan Cavanaugh improperly made to another restaurant he owned and operated.[4]

None of this evidence, however, compels the conclusion that in overseeing and managing the Company's operations Defendants did not possess all of the confidential information to which Kohut had access as the Company's attorneys. That others may have carried out some tasks under Defendants' supervision fails to establish that Defendants did not possess confidential information about those tasks when Defendants were the ones with the exclusive right to manage the Company. Moreover, although we ordinarily infer all findings necessary to support the trial court's decision, we do so only if substantial evidence supports those inferences (*Nellie Gail*, *supra*,

[3] In their brief, Plaintiffs use the term "Cavanaugh" to refer to both Cavanaugh and Management. This terminology is confusing because it suggests Plaintiffs strictly are referring to Cavanaugh as an individual rather than collectively to Cavanaugh as an individual and Management. To avoid confusion, we use the term Defendants to refer collectively to Cavanaugh and Management.

[4] Plaintiffs' also cite a statement in Belshe's declaration that Cavanaugh is responsible for the overall and day-to-day creative side of the Company's business as evidence that he is not responsible for other aspects of the Company's business. The same declaration, however, also states that Cavanaugh oversees the management and operations of the Company's entire business, and therefore we do not view the foregoing statement as evidence supporting Plaintiffs' contention.

17

4 Cal.App.5th at p. 996), and only when the record shows the court actually performed its factfinding function on the question for which we would infer findings (*Kemp Bros. Construction, Inc. v. Titan Electric Corp.* (2007) 146 Cal.App.4th 1474, 1477 ["'When the record clearly demonstrates what the trial court did, we will not presume it did something different'"]).  As explained, the evidence Plaintiffs cite fails to establish Defendants did not possess the Company's confidential information, and the record shows the court failed to determine whether Defendants were insiders subject to the *Forrest* rule.[5]

We therefore issue a writ of mandate directing the trial court to vacate its order disqualifying Kohut, to review the evidence regarding Defendants' role in running the Company and the confidential information to which they were privy, and to determine whether *Forrest* and the cases applying it permit Kohut to continue representing Defendants in this derivative lawsuit despite the court's finding that representation is substantially related to Kohut's previous representation of the Company.  The court also should determine whether Kohut's disqualification is required by the prohibition against concurrent representation of clients with conflicting interests and the potential need for attorneys with Kohut to testify at trial.  Plaintiffs' motion raised both of these additional grounds for disqualifying Kohut, but the trial court did not reach these issues because of its decision to grant the disqualification motion on successive representation grounds.

---

[5]  Plaintiffs also argue the *Forrest* line of cases does not apply because "the dispute here involves a quarrel between only three of six of the individual members [of the Company], so the interests of all of the members are not fully represented in this lawsuit."  We fail to see how the existence of other members has any bearing on whether Kohut may continue to represent Defendants in this lawsuit, and Plaintiffs failed to explain this contention.  As discussed above, whether the *Forrest* rule applies turns on the insiders' role in the company and the confidential information they possess.  The existence of other members or shareholders who are not parties to the lawsuit has no bearing on that question.

Plaintiffs contend we should uphold the trial court's disqualification order based on these alternative grounds, but they fail to brief either of these issues and therefore forfeited them on appeal. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656 [appellant forfeits argument on appeal by incorporating briefs filed in trial court rather than briefing issue on appeal]; *Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1301, fn. 2 ["[I]t is not appropriate to incorporate by reference, into a brief, points and authorities contained in trial court papers, even if such papers are made a part of the appellate record"].) Moreover, the authority to disqualify an attorney is vested in the trial court's sound discretion based on its superior knowledge of the case and its factual findings, and therefore the trial court should make that determination in the first instance.[6]

### III

### DISPOSITION

The petition is granted. Let a writ of mandate issue directing the trial court to (1) vacate its order disqualifying Kohut from representing Defendants in this lawsuit; (2) determine whether *Forrest* and the other cases applying it allow Kohut to continue representing Defendants in this lawsuit; (3) determine whether Kohut concurrently represented Defendants and the Company so as to require Kohut's disqualification; (4) determine whether Kohut should be disqualified from representing Defendants in this lawsuit because one or more of its attorneys testify as a witness in this lawsuit; and

---

[6] Because we grant Defendants' petition and issue a writ of mandate directing the trial court to vacate its disqualification order, we do not reach Defendants' alternative request for a writ of mandate directing the court to vacate its order denying Defendants' reconsideration motion.

(5) enter a new order deciding Plaintiffs' disqualification motion based on the foregoing determinations.  Defendants shall recover their own costs on this writ proceeding.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.

20

Filed 7/28/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BEACHCOMBER MANAGEMENT CRYSTAL COVE, LLC, et al.,<br><br>    Petitioners,<br><br>        v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>    Respondent;<br><br>DOUGLAS L. SALISBURY, as Trustee, etc., et al.,<br><br>    Real Party in Interest. | G054078<br><br>(Super. Ct. No. 30-2016-00839339)<br><br>ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed in the above-entitled matter on June 28, 2017, is hereby MODIFIED as follows:

1.     On page 2, the second sentence of the first paragraph, beginning with "Plaintiffs Douglas L. Salisbury," delete the words "as the sole" between the words "Defendants took" and "managing member" and replace them with the word "in," and

21

delete the words "member of" between the words "managing" and "the Company" so the sentence reads:

> Plaintiffs Douglas L. Salisbury, as trustee of the DLS Living Trust, Philip de Carion, and Gina de Carion (collectively, Plaintiffs) brought this derivative lawsuit on behalf of Beachcomber at Crystal Cove, LLC (Company) to challenge various actions Defendants took in managing the Company.

2. On page 5, the second sentence of the last paragraph, beginning with "Specifically, Plaintiffs argued," delete the word "argued" near the beginning of the sentence and replace it with the words "based their," delete the words "was required based on the conflicts" after the word "disqualification" and replace them with the words "motion on conflicts" so the sentence reads:

> Specifically, Plaintiffs based their disqualification motion on conflicts of interest arising from (1) Kohut's concurrent representation of the Company and Defendants; (2) Kohut's successive representation of the Company and Defendants concerning the disputes over the Company's operations; and (3) the need for Kohut to testify in this lawsuit about the services it provided to the Company and Defendants.

3. On page 6, the fourth sentence of the last paragraph, beginning with "Moreover, a declaration Defendants submitted," delete the words "regarding Salisbury's complaints" at the end of the sentence so the sentence reads:

> Moreover, a declaration Defendants submitted from Tad Belshe, the Company's Vice President of Operations, confirmed Kohut had jointly represented the Company and Defendants.

4. On page 12, the first sentence of the first full paragraph, beginning with "Successive representation rules, however," delete the word "the" before the word "insiders" at both locations in the sentence so the sentence reads:

22

Successive representation rules, however, generally do not prevent an attorney from continuing to represent insiders in a derivative lawsuit even though a substantial relationship exists between the attorney's previous representation of the company and the attorney's current representation of insiders in the company's lawsuit against them.

5. On page 12, the second sentence of the first full paragraph, beginning with "This separate rule," delete the words "for derivative lawsuits" following the words "This separate rule," delete the word "the" before the word "insiders," and delete the words "true sources and possessors" following the words "insiders are the" and replace them with the word "source" so the sentence reads:

This separate rule derives from a recognition that insiders are the source of a closely held company's confidential information.

6. On page 12, the second sentence of the second full paragraph, beginning with "Once a substantial relationship," insert the word "therefore" between the words "the first representation and" and "the attorney's disqualification" so the sentence reads:

Once a substantial relationship between the two representations is shown, courts must presume the attorney received confidential information during the first representation and therefore the attorney's disqualification in the second representation is mandatory.

7. On page 13, the first sentence of the first paragraph, beginning with "In a small or closely held company," delete the words "the functioning of the company" near the beginning of the sentence and replace them with the words "the company's operations," and delete the words "company and its insiders" between the words "distinction between the" and "is entirely fictional" and replace them with the word "two" so the sentence reads:

23

In a small or closely held company, the company's operations and its insiders typically are so intertwined that any distinction between the two is entirely fictional.

8. On page 13, the second sentence of the first paragraph, beginning with "The insiders are the repositories," insert the word "often" after the words "The insiders" at the beginning of the sentence so the sentence reads:

The insiders often are the repositories and source of all confidential information an attorney may receive in representing the company.

9. On page 13, the fifth sentence of the first paragraph, beginning with "As the repositories and source," delete the words "the insiders would be able to" following the words "the company's confidential information," and replace them with the words "insiders could," and delete the words "be a futile act that merely generates" between the words "the original attorney would" and "attorney fees" and replace them with the words "serve no purpose and needlessly generate" so the sentence reads:

As the repositories and source of the company's confidential information, insiders could provide their new attorney with the same information their previous attorney had, and therefore disqualifying the original attorney would serve no purpose and needlessly generate attorney fees as the new attorney gets up to speed.

10. On page 13, the last sentence of the last paragraph, beginning with "The trial court granted the motion," delete the words "trial court granted" at the beginning of the sentence and replace them with the words "Court of Appeal affirmed the trial court's order granting," and delete the word "denied" between the words "but" and "the motion to disqualify" and replace it with the word "denying" so the sentence reads:

The Court of Appeal affirmed the trial court's order granting the motion to disqualify the attorney from representing the corporations, but denying the

24

motion to disqualify the attorney from representing the majority shareholders.

11.     On page 14, the first complete sentence at the top of the page, stating "The Court of Appeal Affirmed," delete the entire sentence.

12.     On page 14, the first sentence of the first full paragraph, beginning with "The *Forrest* court explained," delete the words "a claim" between the words "the lawsuit essentially was" and "by the corporation against" and replace them with the word "brought" so the sentence reads:

> The *Forrest* court explained the prohibition on concurrent representation of clients with conflicting interests prohibited the attorney from continuing to represent both the corporations and the majority shareholders because the lawsuit essentially was brought by the corporations against the majority shareholders.

13.     On page 14, the third and fourth sentences of the last paragraph, beginning with "Cavanaugh is Management's sole managing member" and "Indeed, Cavanaugh actively oversees," delete the words "as it operates the Company" at the end of the third sentence and replace them with the word "and," insert a comma before the new word "and," delete the period at the end of the third sentence, delete the words "Indeed, Cavanaugh" at the beginning of the fourth sentence, and delete the word "oversees" near the beginning of the fourth sentence and replace it with the word "oversaw" so the combined sentence reads:

> Cavanaugh is Management's sole managing member with the exclusive right to run Management, and actively oversaw the Company's management and operations.

14.     On page 15, the second complete sentence at the top of the page, beginning with "These fundamental facts," delete the word "fundamental" near the beginning of the sentence and replace it with the word "undisputed," and delete the words

25

"the conclusion" between the words "and Kohut support" and "Kohut may continue" and replace them with the words "Defendants' argument" so the sentence reads:

> These undisputed facts about this lawsuit and the relationship among the parties and Kohut support Defendants' argument Kohut may continue representing Defendants despite the trial court's finding a substantial relationship existed between the firm's previous representation of the Company and its current representation of Defendants.

15. On page 16, the last sentence of the partial paragraph at the top of the page, beginning with "Plaintiffs misconstrue *Forrest*," delete the words "the rule it establishes" at the end of the sentence and replace them with the words "its decision" so the sentence reads:

> Plaintiffs misconstrue *Forrest* and the basis for its decision.

16. On page 16, the second sentence of the first full paragraph, beginning with "Applying a presumption," delete the word "the" between the words "his or her representation of" and "insiders makes little sense," and delete the words "that situation" between the words "makes little sense in" and "because the insiders" and replace them with the words "this context" so the sentence reads:

> Applying a presumption that requires disqualification based solely on the relationship between the attorney's representation of the company and his or her representation of insiders makes little sense in this context because the insiders are the source of the attorney's information, or at least they possess the same information as the attorney, and therefore the attorney's representation of the insiders does not threaten the attorney's duty of confidentiality to the Company.

17. On page 16, the first sentence of last paragraph, beginning with "Although *Forrest* used the terminology," delete the words "factual scenario *Forrest* presented" following the words "terminology describes the" and replace them with the

words "factual scenario in *Forrest*," delete the words "for the" between the words "minimum threshold" and "*Forrest* rule to apply" and replace them with the words "to apply the," and delete the words "to apply" at the end of the sentence so the sentence reads:

> Although *Forrest* used the terminology "sole repositories of corporate information to which the attorney has had access" (*Forrest*, *supra*, 58 Cal.App.4th at p. 82), that terminology describes the factual scenario in *Forrest*, not the minimum threshold to apply the *Forrest* rule.

18. On page 16, the fourth sentence of the last paragraph, beginning with "Likewise, it is irrelevant," delete the word "Likewise" at the beginning of the sentence and replace it with the word "Similarly" so the sentence reads:

> Similarly, it is irrelevant that the insiders may have delegated certain tasks or responsibilities to others.

These modifications do not change the judgment.

The Association of Southern California Defense Counsel has requested that we certify our opinion for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.

27