Filed 7/10/23  Wheatley v. County of Orange CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBERT WHEATLEY et al., | |
| Plaintiffs and Respondents, | G061149 |
| v. | (Super. Ct. No. 30-2021-01205181) |
| COUNTY OF ORANGE, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Nathan R. Scott, Judge.  Affirmed.  Motion to offer new evidence.  Denied.

Lynberg & Watkins, S. Frank Harrell, Norman J. Watkins and Marlena R. Mlynarska for Defendant and Appellant.

Klein & Wilson, Gerald A. Klein and Brian M. Kelly for Plaintiffs and Respondents.

Disqualification of counsel is the appropriate remedy when a law firm concurrently represents two clients with adverse interests. In this case, substantial evidence supports the trial court's finding the Lynberg & Watkins law firm (Lynberg) entered into an attorney-client relationship with Robert Wheatley and his law firm[1] at the same time Lynberg was representing the County of Orange and other individual defendants (collectively the County) in connection with a lawsuit Wheatley was preparing to file against them. The trial court did not err by disqualifying Lynberg from representing the County in Wheatley's lawsuit. We therefore affirm.

Because this is a matter of simultaneous or concurrent representation, rather than successive representation, and therefore implicates a violation of the duty of loyalty to the client, the County's arguments regarding the type of confidential information disclosed, the viability and strength of ethical walls, and the departure of the "tainted" attorneys from the Lynberg firm are not on point.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Beginning in July 2016, Wheatley and the County of Orange had a written contract by which worker's compensation claims concerning county employees were referred to Wheatley. The contract was amended in January 2018. Effective November 2019, the County of Orange cancelled the contract and pulled all cases from Wheatley. Wheatley contends Orange County's Risk Manager, Michael Alio, and its Chief Executive Officer, Frank Kim, did not like Robert because Wheatley succeeded in reducing the County of Orange's reserves for worker's compensation claims and because Wheatley refused to participate in Alio's alleged practice of falsifying worker's

---

[1] The plaintiffs/respondents in this case are attorney Robert Wheatley and The Wheatley Firm, also known as the Law Offices of Robert Wheatley. We will refer to these parties as Wheatley. William Wheatley is the brother of Robert Wheatley. William Wheatley is also an attorney working in a different law firm. We will refer to individuals Robert Wheatley and William Wheatley by their first names, where appropriate, to avoid confusion; we intend no disrespect.

2

compensation resolutions.  On November 20, 2019, the County retained Lynberg to represent it in the anticipated litigation to be brought by Wheatley.  Robert was unaware of Lynberg's involvement in the anticipated Wheatley litigation against the County.

In December 2019, allegedly as a result of the loss of worker's compensation business, Wheatley laid off attorney Lee Ann Smythe.  In January 2021, Smythe filed a complaint against Wheatley, alleging age discrimination and wrongful termination (the Smythe litigation).  William initially represented Wheatley in the Smythe litigation.

On April 7, 2021, Robert e-mailed Norman Watkins, a partner in Lynberg's Orange County office, to discuss "representing my firm for an Age Discrimination lawsuit."  Having received no response from Watkins, Robert contacted an associate attorney in Lynberg's Los Angeles office, Kimberly Horne, by e-mail on May 12, 2021.[2] Robert asked Horne if she could handle an age discrimination case.  Horne forwarded Robert's e-mail to the firm's managing partner, Michael Larin, and another attorney. Larin immediately e-mailed Robert and recommended Courtney L. Hylton, a partner in Lynberg's Orange County office, specializing in employment defense.

The next day, Robert asked Larin to set up a meeting with Hylton.  He also wrote:  "'According to my records we do not have a conflict, however, I'm sure you will do a conflict of interest check and you should check:  Robert Wheatley, The Wheatley Firm, and Law Offices of Robert Wheatley.'"  Larin connected Robert with Hylton.

Robert and Hylton scheduled a videoconference for May 17, 2021, in which William and Lynberg associate Ladan Shelechi would also participate.  At Hylton's request, William sent the complaint and answer from the Smythe litigation to Hylton before the videoconference.  At the beginning of the videoconference, Robert

---

[2]  While Lynberg suggests Robert's communication to a first-year associate without experience in defending age discrimination matters is a sign of bad faith, Robert's declaration explains Horne was a law school classmate of his daughter.

asked Hylton if they had "cleared conflicts," and Hylton responded, "'we checked and we're clear.'" (Italics and boldface omitted.) Robert, William, Hylton, and Shelechi then discussed the reasons Wheatley terminated Smythe, Wheatley's future plans with respect to Smythe, and Wheatley's employment reimbursement practices.

The parties dispute whether during the videoconference Robert provided confidential information regarding Wheatley's lawsuit against the County, specifically the nature of the dispute between Wheatley and the County, including claims for damages, Wheatley's beliefs regarding Alio's falsification of documents, and Wheatley's strategy to prove Alio's falsification of documents.[3] Robert declared he disclosed confidential information to the Lynberg attorneys regarding both lawsuits "because the cases are inextricably interrelated. Essentially, my defense to the Smythe Litigation forms my affirmative claims in the Alio Litigation: Defendants' actions caused my firm to suffer significant lost revenues, which required me to lay off Smythe. The impact of Defendants' actions on my law firm is inseparable from my defense to the Smythe Litigation. The two actions involve the same facts (e.g., the loss of business revenue and the reasons for that loss) and the same witnesses (e.g., Alio, Kim, and other personnel at the County)." (Italics omitted.)

Hylton provided legal advice to Wheatley and agreed to send Wheatley a retainer agreement. The next day, however, Hylton wrote to Wheatley: "Although our initial conflict check was clear, I have been informed that our firm has been retained to represent the County of Orange with respect to the claim for damages your firm submitted against the County. As such, I am unable to represent you on this matter. I am truly sorry this did not come to light earlier. I wish you the best of luck in the matter with Ms. Smythe."

---

[3] The facts presented here are those in the light most favorable to the trial court's ruling. We will address Lynberg's account of the statements made by the parties in the videoconference later in the opinion.

4

No one from Lynberg sought Wheatley's consent to a conflict, and no one responded to separate e-mails from Robert and William regarding Hylton's initial representation the firm did not have any conflicts of interest.

Wheatley filed a complaint against the County on June 10, 2021, and filed an amended complaint on June 28.[4] On August 4, 2021, Robert sent an e-mail to Hylton and Shelechi stating the summons and complaint in Wheatley's action against the County would soon be served and asking Lynberg to withdraw as counsel for the County. No one at Lynberg replied. On September 1, 2021, a Lynberg attorney e-mailed William to advise him Lynberg was representing the County and the individual defendants in the litigation. William responded, in relevant part: "As you should be aware, it is our position that your firm has a conflict of interest that precludes you from representing the defendants in this matter as noted in the email exchanges of May 18-20, 2021 and most recently August 4, 2021 with Ms. Hylton and Ms. Shelechi of your firm. I am attaching those email communications (to which we have never received a response) in the event you have not seen them." On behalf of Lynberg, Watkins responded they disagreed with William's conflict of interest contention.

On September 29, 2021, Wheatley filed a motion to disqualify Lynberg as counsel for the County. Following briefing, a hearing, and supplemental briefing, the trial court granted the motion to disqualify. The County filed a timely appeal.[5]

---

[4] The amended complaint asserted eight causes of action; after meeting and conferring regarding an anti-SLAPP motion, Wheatley dismissed all causes of action without prejudice, except for a cause of action for breach of contract.

[5] An order granting an attorney disqualification order is immediately appealable. (*URS Corp. v. Atkinson/Walsh Joint Venture* (2017) 15 Cal.App.5th 872, 878; see Code Civ. Proc., § 904.1, subd. (a)(6).) Although Lynberg had standing to appeal the disqualification order as the disqualified law firm, (*Kirk v. First American Title Co.* (2010) 183 Cal.App.4th 776, 791, fn. 10) (*Kirk*), it did not do so.

DISCUSSION

I.

STANDARD OF REVIEW

We review the trial court's decision to disqualify the County's attorneys for abuse of discretion.  (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 (*SpeeDee Oil*); *Jarvis v. Jarvis* (2019) 33 Cal.App.5th 113, 128 (*Jarvis*).)  "'The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.'  [Citation.]" (*Jarvis, supra*, at p. 128.)  "If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence.  [Citations.]" (*SpeeDee Oil, supra*, 20 Cal.4th at p. 1143.)  "[A] disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion.  [Citation.]" (*Id.* at p. 1144.)

II.

LYNBERG VIOLATED THE DUTY OF LOYALTY TO WHEATLEY BY ENTERING INTO AN ATTORNEY-CLIENT RELATIONSHIP WITH WHEATLEY WHILE CONCURRENTLY REPRESENTING THE COUNTY IN AN ACTION ADVERSE TO WHEATLEY; DISQUALIFICATION IS APPROPRIATE

A motion to disqualify counsel presents a conflict between a party's right to be represented by counsel of their own choice, and the maintenance of ethical standards and the preservation of public trust.  (*SpeeDee Oil, supra*, 20 Cal.4th at pp. 1145–1146.)  "Attorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process.  [Citation.]  The effective functioning of the fiduciary relationship between attorney and client depends on the client's trust and confidence in counsel.  [Citation.]  The courts will protect clients' legitimate expectations of loyalty to preserve this essential basis for trust

6

and security in the attorney-client relationship.  [Citation.]  Therefore, if an attorney—or more likely a law firm—simultaneously represents clients who have conflicting interests, a more stringent per se rule of disqualification applies.  With few exceptions, *disqualification follows automatically, regardless of whether the simultaneous representations have anything in common or present any risk that confidences obtained in one matter would be used in the other*.  [Citation.]"  (*SpeeDee Oil, supra*, 20 Cal.4th at pp. 1146–1147, italics added; see *Flatt v. Superior Court*  (1994) 9 Cal.4th 275, 285 (*Flatt*); *Beachcomber Management Crystal Cove, LLC v. Superior Court* (2017) 13 Cal.App.5th 1105, 1117.)[6]

In *SpeeDee Oil*, the California Supreme Court set forth a clear means for determining whether a law firm is representing a client:  "An attorney represents a client—for purposes of a conflict of interest analysis—when the attorney knowingly obtains material confidential information from the client and renders legal advice or services as a result.  [Citations.]"  (*SpeeDee Oil, supra*, 20 Cal.4th at p. 1148.)  The lack of a written retainer agreement, the failure to agree on a fee to be charged, or the fact the attorney has spent very little time on the matter does not affect this analysis.  (*Id.* at p. 1147–1148.)  "The primary concern is whether and to what extent the attorney acquired confidential information."  (*Id.* at p. 1148.)  Indeed, as the Supreme Court noted in *Flatt, supra*, 9 Cal.4th at page 284:  "Even though the simultaneous representations may have *nothing* in common, and there is *no* risk that confidences to which counsel is a party in the one case have any relation to the other matter, disqualification may nevertheless be *required*."

---

[6]  An exception to this rule exists when the matters are unrelated, the law firm has made full disclosure, and both clients have provided written consent. (*Flatt, supra*, 9 Cal.4th at p. 285, fn. 4; see Cal. Rules Prof. Conduct, rule 1.7 ["A lawyer shall not, without informed written consent from each client . . . represent a client if the representation is directly adverse to another client in the same or a separate matter"].)

7

The trial court found Lynberg was defending the County against Wheatley's claims as of May 17, 2021. The court further found Wheatley entered into an attorney-client relationship with Lynberg in the Smythe litigation on May 17, 2021, based on the exchange of confidential information by Wheatley to Lynberg and the provision of legal advice by Lynberg to Wheatley during the videoconference. These findings are supported by substantial evidence. While the Lynberg attorneys (Hylton and Shelechi) who participated in the videoconference with Robert and William stated in their declarations Wheatley did not provide them with any confidential information regarding Wheatley's claims against the County, under *SpeeDee Oil* the exchange of any confidential information is sufficient to support the trial court's finding. The trial court did not err by concluding an attorney-client relationship was formed. As noted *ante*, the provision of legal advice to a client seeking such advice is prima facie evidence an attorney-client relationship was formed. (*SpeeDee Oil, supra*, 20 Cal.4th at p. 1148.)

Lynberg does not deny it entered into an attorney-client relationship with Wheatley. Lynberg instead focuses on whether Wheatley was likely to have shared details of its anticipated lawsuit against the County with Hylton and Shelechi, or whether the Lynberg attorneys would have ended the videoconference as soon as Wheatley began talking about the County. We need not address this argument because, as this is a matter of concurrent representation, the extent of the confidential information shared between client and attorney does not matter. Moreover, the credibility of witnesses and the weight to give to their testimony is quintessentially a job for the trial court. (*Dodge, Warren & Peters Ins. Services, Inc. v. Riley* (2003) 105 Cal.App.4th 1414, 1420.)

III.

CASES INVOLVING SUCCESSIVE REPRESENTATION AND ETHICAL WALLS ARE INAPPOSITE

The County argues the trial court erred by applying a rule of automatic disqualification and failing to consider the ethical wall Lynberg erected between the attorneys representing the County and the specific attorneys who had entered an attorney-

8

client relationship with Wheatley. The County concedes "vicarious disqualification is the *general* rule." (*Kirk, supra*, 183 Cal.App.4th at p. 801.) However, the authorities the County cites involve *successive*, not *concurrent* representation of clients with adverse interests.

In *Kirk*, three attorneys at Bryan Cave represented First American Title Insurance Company in a series of class actions. (*Kirk, supra*, 183 Cal.App.4th at p. 785.) Counsel for the plaintiffs in the class actions contacted Gary Cohen, a former deputy commissioner and general counsel of the California Department of Insurance who was then chief counsel at Fireman's Fund Insurance Company, and asked him to serve as a consultant in the class actions. (*Id.* at p. 786.) Confidential information was provided to Cohen, but he declined the consultant position. (*Ibid.*)

A year later, Cohen joined the law firm of Sonnenschein Nath & Rosenthal. (*Kirk, supra*, 183 Cal.App.4th at p. 787.) Plaintiffs' counsel contacted Cohen again asking him to serve as an expert consultant; Cohen declined the offer, having confirmed through a conflicts check the Sonnenschein firm represented First American. (*Ibid.*) About a month later, the Bryan Cave attorneys representing First American moved to Sonnenschein and brought the class actions with them. (*Ibid.*) After plaintiffs' counsel objected to Sonnenschein handling the class actions due to counsel's confidential communications with Cohen, Sonnenschein erected an ethical wall around Cohen related to the class actions. (*Id.* at pp. 787–788.) After the ethical wall was erected, Cohen helped draft a letter to the Department of Insurance regarding another lawsuit against First American. (*Id.* at pp. 788–789.) In this separate lawsuit, an issue was the plaintiffs' need to exhaust administrative remedies, which was also an issue in the class actions. (*Ibid.*)

Plaintiffs in the class actions then moved to disqualify Sonnenschein based on their previous disclosure of confidential communications to Cohen. The trial court granted the motion, concluding vicarious disqualification of the law firm is automatic,

9

regardless of an ethical wall, when an attorney possesses "disqualifying confidential client information." (*Kirk, supra*, 183 Cal.App.4th at p. 790.) The appellate court concluded, under the factual circumstances of the matter, vicarious disqualification was not automatic but could be rebutted by a proper ethical wall. (*Id.* at p. 791.)[7]

*Kirk* distinguished *Flatt* as a case of breach of the duty of loyalty, rather than a case of breach of the duty of client confidentiality at issue in cases of vicarious disqualification. (*Kirk, supra*, 183 Cal.App.4th at p. 796.) *Kirk* also engaged in a comprehensive summary of the laws of California, the laws of other states, and policy considerations regarding vicarious disqualification in cases where an attorney with confidential client information switches sides in the same case. (*Id.* at pp. 792–809.) Ultimately, the *Kirk* court concluded when an attorney "tainted" with confidential information moves to a new firm, a rebuttable presumption arises that the attorney shared the confidential information with other attorneys at the law firm. (*Id.* at pp. 809–810.) The burden then shifts to the law firm to prove an effective ethical screen has been established around the tainted attorney. (*Id.* at p. 810.)

In *Fluidmaster, Inc. v. Fireman's Fund Ins. Co.* (2018) 25 Cal.App.5th 545 (*Fluidmaster*), Fluidmaster and Fireman's Fund were adverse in a case in which Fluidmaster sought insurance coverage in class actions regarding Fluidmaster's allegedly defective products. (*Id.* at p. 548.) The Irvine office of the Crowell & Moring law firm represented Fireman's Fund in that case. (*Ibid.*) During the pendency of the lawsuit, attorney Elizabeth Pollock began working in Crowell's Los Angeles office. (*Ibid.*) In her previous employment, Pollock had worked at a technology services company where

---

[7] The *Kirk* court referenced California Rules of Professional Conduct, former rule 3-310(E), which addressed *former* not *current* clients and is not contained within current rule 1.9. (See *O'Gara Coach Co., LLC v. Ra* (2019) 30 Cal.App.5th 1115, 1124.) By contrast, former rule 3-310(B) and (C) addressed issues of conflicts of interest with current clients, which is now covered by rule 1.7. (See *Jarvis v. Jarvis* (2019) 33 Cal.App.5th 113, 134, fn. 7.)

she was in charge of discovery in the Fluidmaster class actions. (*Ibid.*) When she began work with Crowell, the firm established an ethical wall "prohibiting any communication with [Pollock] on the Fluidmaster plumbing products litigation, and specifically prohibiting attorneys working on the Fluidmaster litigation from using her services." (*Id.* at p. 549, fn. omitted.)

On Fluidmaster's motion, the trial court disqualified the entire Crowell firm. (*Fluidmaster, supra*, 25 Cal.App.5th at p. 549.) During the pendency of the appeal from the disqualification motion, Pollock left the Crowell law firm. (*Ibid.*) The appellate court reversed and remanded the matter for a hearing to determine the strength of the ethical wall around Pollock and whether her time at Crowell "'actually resulted in the improper transmission, directly or indirectly, of confidential information.' [Citation.]" (*Id.* at p. 555, quoting *Kirk, supra*, 183 Cal.App.4th at p. 816.)

*Kirk* and *Fluidmaster* are easily distinguished from the present case. There, the attorney had the adverse party's confidential information *before* joining the disqualified law firm and the disqualified law firm *never had an attorney-client relationship with the adverse party*. Here, Lynberg was adverse to Wheatley, based on Wheatley's anticipated litigation against the County, at the time Lynberg, through Hylton and Shelechi, entered into an attorney-client relationship with Wheatley.

The County contends the attorneys who entered into the attorney-client relationship with Wheatley have left Lynberg and therefore argues the need for disqualification is gone. The duty of loyalty to the client was breached by the law firm. Any ethical wall around Hylton and Shelechi did not solve that problem, and their departure from the firm does not solve the problem either.[8]

---

[8] Because this argument lacks merit, we deny the County's motion to offer new evidence, all of which was relevant to the departure of attorneys Hylton and Shelechi from Lynberg.

11

## IV.

### RULE 1.18 OF THE CALIFORNIA RULES OF PROFESSIONAL CONDUCT IS FACTUALLY INAPPLICABLE

The County also argues the trial court erred in its interpretation of rule 1.18 of the California Rules of Professional Conduct.[9] In its minute order, the trial court concluded: "Rule 1.18 created a third category [besides client and non-client], 'prospective client.' It did so to extend some protection to persons who provided confidential information to attorneys in the course of seeking representation or advice where ultimately no actual attorney-client relationship was formed. [¶] In other words, it promoted some non-clients to 'prospective client' status, with greater protection than they had before. It did not demote any actual clients or afford them less protection then they

_____

[9] Rule 1.18 provides as follows: "(a) A person who, directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from the lawyer in the lawyer's professional capacity, is a prospective client. [¶] (b) Even when no lawyer-client relationship ensues, a lawyer who has communicated with a prospective client shall not use or reveal information protected by Business and Professions Code section 6068, subdivision (e) and rule 1.6 that the lawyer learned as a result of the consultation, except as rule 1.9 would permit with respect to information of a former client. [¶] (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received from the prospective client information protected by Business and Professions Code section 6068, subdivision (e) and rule 1.6 that is material to the matter, except as provided in paragraph (d). If a lawyer is prohibited from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d). [¶] (d) When the lawyer has received information that prohibits representation as provided in paragraph (c), representation of the affected client is permissible if: [¶] (1) both the affected client and the prospective client have given informed written consent, or [¶] (2) the lawyer who received the information took reasonable measures to avoid exposure to more information than was reasonably necessary to determine whether to represent the prospective client; and [¶] (i) the prohibited lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and [¶] (ii) written notice is promptly given to the prospective client to enable the prospective client to ascertain compliance with the provisions of this rule."

12

already had. [¶] In this case, after considering oral argument and reviewing all of the briefing, the court is still persuaded that an actual attorney-client relationship was formed. As plaintiffs were actual clients of Lynberg & Watkins, Rule 1.18 is inapplicable. Thus, there is no need to analyze whether this matter is 'substantially related' to the *Smythe* matter, work through the 'reasonable measures' exception, or determine plaintiffs' good or bad faith. [Citation.]"[10]

We agree with the trial court's interpretation of rule 1.18. Wheatley was a client of Lynberg, and therefore there is no need to try to place Wheatley in a new category of prospective clients. This is particularly true when the new category of prospective clients was created in order to provide protection to the confidential information of more people, not fewer. (See Cal. Rules of Prof. Conduct, rule 1.18, comment 1.)

The County contends Wheatley did not act in good faith in seeking representation from Lynberg in connection with the Smythe litigation. The record belies this contention. When Robert first contacted Lynberg's Orange County office seeking representation, no response was received; Lynberg did not respond to indicate they were handling another matter for the County adverse to Wheatley. More than a month later, when Robert communicated with Lynberg's Los Angeles office, he was almost immediately connected with an attorney in the Orange County office. Five days passed before the initial videoconference. During that time, Robert asked Lynberg to run a

---

[10] Comment 2 to rule 1.18 provides: "Not all persons who communicate information to a lawyer are entitled to protection under this rule. A person who by any means communicates information unilaterally to a lawyer, without reasonable expectation that the lawyer is willing to discuss the possibility of forming a lawyer-client relationship or provide legal advice is not a 'prospective client' within the meaning of paragraph (a). In addition, a person who discloses information to a lawyer after the lawyer has stated his or her unwillingness or inability to consult with the person [citation], or who communicates information to a lawyer without a good faith intention to seek legal advice or representation, is not a prospective client within the meaning of paragraph (a)."

13

conflicts check, and provided all names to be checked.  Finally, before the videoconference started, Robert asked whether they had "cleared conflicts" and the Lynberg attorneys responded "'we checked and we're clear.'"  (Italics and boldface omitted.)  The record does not indicate where and how Lynberg's conflicts check process broke down, but any failure to identify the adverse representation before the first meeting between Lynberg and Wheatley was Lynberg's.

## DISPOSITION

The order is affirmed.  Respondents to recover costs on appeal.


MOTOIKE, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

14