[No. B216392. Second Dist., Div. Two. Feb. 2, 2011.]

BLUE WATER SUNSET, LLC, Plaintiff and Appellant, v. PHILIP MARKOWITZ, Defendant and Respondent.

COUNSEL

Law Offices of Yana Henriks, Yana Henriks; Esner & Chang, Stuart B. Esner and Andrew N. Chang for Plaintiff and Appellant.

Law Office of Gary Kurtz, Gary Kurtz; Benedon & Serlin, Gerald M. Serlin and Kelly R. Horwitz for Defendant and Respondent.

OPINION

**ASHMANN-GERST, J.**—Blue Water Sunset, LLC (Blue Water), filed a motion to disqualify Attorney Gary Kurtz (Kurtz) from a derivative action during which he briefly represented certain defendants as well as limited liability company plaintiffs[1] at the same time. The trial court denied the motion and Blue Water appealed. Pursuant to *Forrest v. Baeza* (1997) 58 Cal.App.4th 65, 74–75 [67 Cal.Rptr.2d 857] (*Forrest*), Kurtz should have been disqualified from representing the limited liability company plaintiffs. In reversing in part and affirming in part, we announce a limited exception to the rule that a complaining party lacks standing to seek disqualification of an attorney unless the party and attorney have some sort of attorney-client or fiduciary relationship. If an attorney simultaneously represents a limited liability company and a member with conflicting interests in a derivative action filed by the second and only other member, and if the limited liability company's consent to concurrent representation is required by California State Bar Rules of Professional Conduct, rule 3-310,[2] the second member has vicarious standing to move to disqualify. Vicarious standing is based on the limited liability company's standing under existing case law and the second member's unilateral right under rule 3-600 to decide for the limited liability company whether to waive the conflict of interest.

---

[1] As we explain, some of Kurtz's clients were nominal defendants in derivative causes of action, which means that they were really plaintiffs. Whether he claims ignorance of this fact is immaterial. Every member of the bar is obligated to know that when a limited liability company in a derivative action is named as a defendant, it is done so pursuant to Code of Civil Procedure section 382, which provides in relevant part that "[i]f the consent of any one who should have been joined as plaintiff cannot be obtained, he may be made a defendant . . . ."

[2] All further references to rules are to the State Bar Rules of Professional Conduct unless otherwise specified.

## FACTS[3]

### Background; initiation of this action

Blue Water and Philip Markowitz (Markowitz) are each 50 percent members of Rail Prop LLC (Rail Prop), First View LLC (First View) and Markowitz Investment Group LLC (Markowitz Investment) (collectively the limited liability companies). Separately, Markowitz owns an entity called Four Star Properties, LLC (Four Star). In 2004, Blue Water sued Markowitz and asserted, inter alia, causes of action for dissolution of the limited liability companies, breach of contract, breach of fiduciary duty, accounting, declaratory relief, fraud and fraudulent conveyance. Allegedly, Markowitz misappropriated income and conveyed real estate assets of the limited liability companies to others, including Four Star, without consideration. Blue Water maintained that in order to accomplish the fraudulent transfer of assets, Markowitz conspired with a codefendant by the name of Douglas Kramer (Kramer). To the degree that the causes of action asserted were derivative in nature, the limited liability companies were named as nominal defendants.[4] (*Blue Water Sunset, LLC v. First View, LLC, supra*, B204012 [nonpub. opn.].)

### The receivership estate

The trial court appointed a receiver for real property owned by the limited liability companies that consisted primarily of a truck parking facility. In October 2005, the trial court issued an amended order transferring property owned by Four Star into the receivership estate. The order was based on evidence that Markowitz caused Rail Prop to deed property to Four Star, he was operating both the receivership property and the Four Star property as a parking lot, and he was not turning over the rental income from the properties to the receiver.[5]

### Kurtz and Sandler

Kurtz and Steven Sandler (Sandler) shared an office, a secretary and amenities. Sandler was Four Star's attorney of record. He eventually introduced Kurtz to Markowitz and, in November 2005, Kurtz substituted in as

---

[3] In stating the material facts, we have relied in part on the statement of facts in our prior opinion involving the same action, *Blue Water Sunset, LLC v. First View, LLC* (Dec. 9, 2008, B204012) (nonpub. opn.).

[4] At some point Four Star was joined as a defendant.

[5] Blue Water did not include the relevant orders or transcripts in the appellate record. However, Blue Water did include a tentative ruling on a motion by Four Star to exclude property from the receivership estate. That tentative ruling provides a procedural background. In addition, the declaration of Yana Henriks (Henriks), a member and manager of Blue Water, fills in some details. Markowitz does not dispute references to the receivership in Blue Water's briefs.

the attorney for Markowitz. Soon thereafter, Kurtz replaced Sandler as Four Star's attorney and, later, Sandler became the attorney for the limited liability companies. Markowitz filed a cross-complaint and sued derivatively and individually against Blue Water and the limited liability companies.[6]

### The demurrer; the appeal

On behalf of Markowitz, Kramer, Four Star and the limited liability companies, Kurtz prepared and filed demurrers to the 12th and 13th causes of actions for fraud and fraudulent conveyance. The papers argued each of the challenged claims was derivative and Blue Water lacked standing because it did not satisfy the pleading requirements imposed on it by Corporations Code section 800, subdivision (b).[7] The fraud claim was time-barred, and the fraudulent conveyance claim was factually deficient because, inter alia, Blue Water did not allege that it was a creditor with a right to payment and the limited liability companies were insolvent. Kurtz appeared at the October 1, 2007, hearing on behalf of Markowitz and Four Star. In addition, Kurtz made a special appearance on behalf of the limited liability companies because Sandler was not in attendance.[8] (*Blue Water Sunset, LLC v. First View, LLC, supra,* B204012 [nonpub. opn.].)

---

[6] The cross-complaint is not in the appellate record. In the appellant's appendix, Blue Water provided us with a copy of an unsigned and unfiled fourth amended cross-complaint in which Markowitz sued Blue Water derivatively and individually for (1) capital contribution to limited liability company, (2) rescission for failure of consideration, (3) fraud, (4) restitution, (5) avoidance of deed and quiet title, and (6) fraudulent conveyance. We are also provided with requests by Markowitz for entry of default against the limited liability companies. They are signed by Kurtz but are not file-stamped.

[7] Corporations Code section 800, subdivision (b)(2) provides that no action may be instituted or maintained on behalf of any corporation by the holder of shares or voting trust certificates unless the "plaintiff alleges in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, and alleges further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file." The court in *PacLink Communications Internat., Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 964 [109 Cal.Rptr.2d 436] held that this rule applies to limited liability companies as well as corporations.

[8] Generally, Kurtz averred that "[o]n certain matters where the interests of all defendants were aligned, and particularly with certain motions or oppositions in which I was the main lawyer preparing the paperwork, I have specially appeared for [Sandler]." He added: "The October 1, 2007, demurrer hearing followed a frequent protocol. I prepared papers and allowed [Sandler] to participate in the motion because their interests were the same. I attended the hearing, appearing for Four Star and [Markowitz] and specially appearing for [Sandler]." Kurtz did not explain why Sandler did not appear. According to Kurtz, he "never appeared as counsel for any of the" limited liability companies. His declaration, however, established that he did just that on October 1, 2007. Moreover, on May 17, 2006, Kurtz filed an ex parte application that stated: "Defendant and Cross-Complainant [(Markowitz)], for himself and for all other defendants, applies ex-parte . . . for an order to take Plaintiff's Summary Judgment Motion,

The trial court sustained the demurrers without leave to amend on the grounds that Blue Water failed to satisfy Corporations Code section 800, subdivision (b), both claims were barred by the three-year statute of limitations, and the fraudulent conveyance claim was factually deficient. Four Star and Kramer were subsequently dismissed. Blue Water filed an appeal and argued that the demurrers were improperly sustained as to all of the defendants. (*Blue Water Sunset, LLC v. First View, LLC, supra*, B204012 [nonpub. opn.].) Kurtz filed a respondent's brief on behalf of Four Star and Markowitz and Sandler filed a joinder in that brief on behalf of the limited liability companies and Kramer. We affirmed the dismissals of Four Star and Kramer and held that the orders with respect to Markowitz and the limited liability companies were not appealable. (*Blue Water Sunset, LLC v. First View, LLC, supra*, B204012 [nonpub. opn.].)

### The motion to disqualify

On December 16, 2008, Blue Water filed a motion arguing that Kurtz was subject to automatic disqualification because he concurrently represented clients with adverse interests and did not obtain the conflict waivers required by rule 3-310 and rule 3-600. Markowitz opposed the motion on various grounds, including that Blue Water lacked standing.

The motion was denied. In its written order, the trial court concluded that the rule of mandatory disqualification did not apply because Kurtz did not concurrently represent the limited liability companies and Markowitz at the time of the hearing. The trial court found that disqualification was inappropriate because Kurtz did not breach a duty of confidentiality to the limited liability companies, and also because Blue Water delayed too long in seeking relief.[9]

This timely appeal followed.

---

presently scheduled for hearing on June 20, 2006, [o]ff [c]alender for failure to serve the motion to allow the statutory time to respond." In our view, Kurtz's ex parte application asserted a position on behalf of the limited liability companies. Additionally, we note that Henriks filed a declaration in support of the motion to disqualify and stated that Kurtz opposed Blue Water's motion for summary judgment in Sandler's stead.

[9] The motion also requested the disqualification of Sandler. That portion of the motion was granted on the grounds that Sandler was representing Markowitz in another proceeding at the same time he was representing the limited liability companies in Blue Water's action. Because the trial court concluded that the representation was concurrent, disqualification was mandatory.

## DISCUSSION

### I. *Standard of review.*

We ordinarily review an order denying a motion to disqualify under the deferential abuse of discretion standard. (*Truck Ins. Exchange v. Fireman's Fund Ins. Co.* (1992) 6 Cal.App.4th 1050, 1059 [8 Cal.Rptr.2d 228] (*Truck*).) But the material facts in this case are undisputed, so our review is de novo. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1148 [86 Cal.Rptr.2d 816, 980 P.2d 371] (*SpeeDee*).) De novo review is also applicable to the issue of standing. (*Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1354 [114 Cal.Rptr.3d 301].)

### II. *Blue Water has standing.*

Markowitz contends that Blue Water lacks standing to seek the disqualification of Kurtz. As discussed below, we disagree.

█ A complaining party who files a motion to disqualify is required to have standing. (*Dino v. Pelayo* (2006) 145 Cal.App.4th 347, 352 [51 Cal.Rptr.3d 620].) Some cases hold that the complaining party must prove a present or past attorney-client relationship with the attorney who is the target of the motion. (*Ibid.*; *Earl Scheib, Inc. v. Superior Court* (1967) 253 Cal.App.2d 703, 707 [61 Cal.Rptr. 386] [a generally recognized exception to disqualification is where the relationship of attorney and client was never in fact created between the attorney and the complaining party]; *Cornish v. Superior Court* (1989) 209 Cal.App.3d 467, 478 [257 Cal.Rptr. 383] [" 'Before an attorney may be disqualified from representing a party in litigation because his representation of that party is adverse to the interest of a current or former client, it must first be established that the party seeking the attorney's disqualification was or is "represented" by the attorney in a manner giving rise to an attorney-client relationship.' "].) Other courts permit disqualification on a different basis, holding that standing is established so long as the lawyer owed a duty of confidentiality to the complaining party and breached it. (*DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 832 [115 Cal.Rptr.2d 847] ["Standing arises from a breach of the duty of confidentiality owed to the complaining party, regardless of whether a lawyer-client relationship existed."].)

█ Blue Water did not have an attorney-client relationship with Kurtz, nor can it claim that it was owed a duty of confidentiality by Kurtz and that he breached that duty. But as we discuss in part III.B. of the Discussion, Kurtz had an attorney-client relationship with the limited liability companies. As a policy matter, their standing must be imputed vicariously to Blue Water.

Under rule 3-600(E), an attorney "representing an organization may also represent any of its . . . members . . . , subject to the provisions of rule 3-310. If the organization's consent to the dual representation is required by rule 3-310, the consent shall be given by an appropriate constituent of the organization other than the individual or constituent who is to be represented, or by the shareholder(s) or organization members." Rule 3-310(C)(2) provides that absent the informed written consent of each client, an attorney shall not "[a]ccept or continue representation of more than one client in a matter in which the interests of the clients actually conflict." These rules establish that Blue Water had the unilateral right to either waive or not waive any conflict of interest Kurtz might have with respect to the limited liability companies. A rule of vicarious standing permits Blue Water to enforce that unilateral right and insist upon the disqualification relief available to the limited liability companies. Any other rule would run the risk of rendering an organization defenseless when it is most vulnerable, i.e., when it is represented by an attorney who has a conflict because he also represents and is beholden to a company insider who injured the company.[10]

III. *Kurtz must be disqualified.*

This appeal requires us to determine whether Kurtz represented the limited liability companies as well as Markowitz, whether Kurtz had an actual conflict of interest, whether the representations were successive or concurrent, and whether the trial court properly denied the motion to disqualify. As discussed below, our analysis dictates that disqualification is mandatory.

A. *Disqualification principles.*

■ When confronted with a motion to disqualify an attorney based on representation of clients with conflicting interests, there are two standards. If an attorney represents a current client against a former client, the attorney will be subject to disqualification if there is a substantial relationship between the two representations. (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283 [36 Cal.Rptr.2d 537, 885 P.2d 950] (*Flatt*).) There is an exception. When the complaining party is guilty of delay, and when that delay is extreme in terms

---

[10] Our standing rule is consistent with *Gong v. RFG Oil, Inc.* (2008) 166 Cal.App.4th 209 [82 Cal.Rptr.3d 416] (*Gong*). In *Gong*, two brothers owned and operated a corporation together. When the minority shareholder (49 percent of the stock) sued the majority shareholder (51 percent of the stock) and the corporation, the latter two retained the same attorney. The minority shareholder moved to disqualify and appealed when the motion was denied. The *Gong* court addressed the merits of the motion without discussing the issue of standing. In doing so, it implicitly accepted what we make explicit today. We recognize, of course, that cases are not authority for propositions not considered. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176 [119 Cal.Rptr.2d 903, 46 P.3d 372].) *Gong* is relevant merely to highlight that our rule achieves a result already deemed acceptable.

of time and consequences, the motion can be denied. (*State Farm Mutual Automobile Ins. Co. v. Federal Ins. Co.* (1999) 72 Cal.App.4th 1422, 1433–1434 [86 Cal.Rptr.2d 20] (*State Farm*).) If an attorney simultaneously represents two clients with adverse interests, automatic disqualification is the rule in all but a few instances. (*Id.* at p. 1431.)

(4) The "primary value at stake in cases of simultaneous or dual representation is the attorney's duty" of loyalty and "the client's legitimate expectation" that the duty will be met. (*Flatt, supra,* 9 Cal.4th at p. 284.) According to *Flatt,* the reason for the automatic disqualification rule is evident based on the following: "A client who learns that his or her lawyer is also representing a litigation adversary, even with respect to a matter *wholly unrelated* to the one for which counsel was retained, cannot long be expected to sustain the level of confidence and trust in counsel that is one of the foundations of the professional relationship. All legal technicalities aside, few if any clients would be willing to suffer the prospect of their attorney continuing to represent them under such circumstances." (*Id.* at p. 285.) The wisdom of the rule is reinforced by the recognition that we can hardly imagine any scenario in which an attorney can represent two adverse clients and refrain from breaching the duty of loyalty. As explained by *State Farm,* "it is a violation of the duty of loyalty for the attorney to assume a position adverse or antagonistic to his or her client without the client's free and intelligent consent given after full knowledge of all the facts and circumstances. [Citation.]" (*State Farm, supra,* 72 Cal.App.4th at p. 1431.)

B. *Kurtz represented the limited liability companies.*

The trial court relied on *Streit v. Covington & Crowe* (2000) 82 Cal.App.4th 441, 446 [98 Cal.Rptr.2d 193] (*Streit*) in finding that Kurtz represented the limited liability companies. We perceive no legal error.[11]

In *Streit,* the court explained that an attorney making a special appearance is associated with the attorney of record. "That the association is limited to a single appearance is a distinction only of degree, not of kind." (*Streit, supra,* 82 Cal.App.4th at p. 445.) Both the attorney of record and associated attorney "have an attorney-client relationship with the litigant they represent until that association is terminated." (*Id.* at p. 446.) Based on *Streit,* Kurtz's preparation of the demurrer and special appearances on behalf of the limited liability companies at the demurrer hearing created an attorney-client

---

[11] At oral argument, counsel for Markowitz suggested that Kurtz simply prepared a demurrer for his clients and Sandler made the decision for the limited liability companies to join. But the record does not contain a joinder filed by Sandler. The language in Kurtz's declaration establishes that he was the one who prepared papers filed on behalf of the limited liability companies.

relationship and he owed them a fiduciary duty, including a duty of utmost loyalty. This is the only conclusion permitted by policy. It would be absurd to conclude that an attorney could author a demurrer and appear on behalf of a party but not be held to the highest standards of fidelity. We would reach the same conclusion even if he only made an appearance. An attorney who makes an appearance has not only the power to aid a litigant but also the power to injure it.

In urging a different conclusion, Markowitz contends that *Streit* is distinguishable and *SpeeDee, supra,* 20 Cal.4th at page 1148 is controlling. *Streit* arose in the context of a legal malpractice claim. (*Streit, supra,* 82 Cal.App.4th at p. 444.) But any distinction is moot. The court did not limit its holding, and we decline to read it narrowly. "The question of whether an attorney-client relationship exists is one of law. [Citations.]" (*Responsible Citizens v. Superior Court* (1993) 16 Cal.App.4th 1717, 1733 [20 Cal.Rptr.2d 756].) For our purposes, *Streit* answers the question unequivocally.

This brings us to *SpeeDee.* In that case, a company was sued and unknowingly consulted an attorney of counsel to the law firm that was representing the plaintiffs. (*SpeeDee, supra,* 20 Cal.4th at p. 1139.) The court explained that there is a rule of automatic disqualification in most cases of concurrent representation (*id.* at p. 1147) and if an "of counsel" attorney is subject to disqualification, disqualification will be imputed to his firm (*id.* at pp. 1155–1156). In determining whether "an attorney-client relationship has reached a point where the attorney can be subject to disqualification for a conflict of interest," the following rule was announced: there is a relationship between an attorney and prospective client if the attorney knowingly obtains confidential information and renders legal advice or services. (*Id.* at pp. 1147–1148.) Properly construed, *Streit* and *SpeeDee* are not inconsistent. Rather, they set forth tests for determining the existence of an attorney-client relationship in entirely different contexts, i.e., *Streit* involved associated counsel who rendered the legal service of appearing in court to an actual client, whereas *SpeeDee* only involved a prospective client. We therefore reject Markowitz's argument that the only standard that applies in the conflict of interest context is the *SpeeDee* test. Therefore, even if the *SpeeDee* test is not met, *Streit* permits the conclusion that Kurtz had an attorney-client relationship with the limited liability companies.

C. *Kurtz had an actual conflict of interest.*

The parties dispute whether Kurtz had an actual conflict of interest. Upon scrutiny of the record, we conclude that he did.

An actual "[c]onflict of interest between jointly represented clients occurs whenever their common lawyer's representation of the one is rendered

less effective by reason of his representation of the other." (*Spindle v. Chubb/Pacific Indemnity Group* (1979) 89 Cal.App.3d 706, 713 [152 Cal.Rptr. 776].)

■ Four Star and Markowitz (individually and by virtue of his control of Four Star) have interests adverse to the limited liability companies with respect to certain real estate and rental income, because each side claims rights to ownership to the exclusion of the other. Once Blue Water sued Four Star and Markowitz derivatively on behalf of the limited liability companies for fraud and fraudulent conveyance, the limited liability companies stood to benefit if Blue Water prevailed. Though nominally named as defendants, the limited liability companies were actually plaintiffs in the eyes of the law. (*Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995, 1004 [84 Cal.Rptr.3d 642] (*Patrick*) [a nominal defendant in a derivative action "is the real plaintiff in a derivative action and the potential beneficiary of any recovery"].) Consequently, in reality, Kurtz represented the plaintiffs *and* the defendants at the demurrer hearing on the derivative causes of action. As noted by *Flatt*, "[t]he paradigmatic instance of . . . prohibited dual representation—one roundly condemned by courts and commentators alike—occurs where the attorney represents clients whose interests are *directly* adverse *in the same litigation*." (*Flatt, supra,* 9 Cal.4th at p. 284, fn. 3.) Moreover, in the context of a derivative action, "[c]urrent case law clearly forbids dual representation of a [company] and [company insiders] . . . , at least where . . . the [company insiders] are alleged to have committed fraud. [Citations.]" (*Forrest, supra,* 58 Cal.App.4th at pp. 74–75.)

The limited liability companies had an expectation that their attorney would do nothing to help Four Star and Markowitz, including assert demurrers and argue that the fraud and fraudulent conveyance causes of action were defective due to lack of standing, time bar or factual sufficiency.[12] It is undeniable that Four Star and Markowitz had the exact opposite expectation. Thus, when Kurtz jointly represented Four Star, Markowitz and the limited liability companies, Kurtz's representation of one side was per se rendered less effective because he was forced to pick one side over the other and could not meet his fiduciary obligations.[13]

---

[12] As nominal defendants, the limited liability companies were permitted to argue that Blue Water lacked standing to file a derivative action. But they were prohibited from defending that action on the merits; i.e., it was improper for them to assert the statute of limitations or to argue that any of the claims were factually deficient. (*Patrick, supra,* 167 Cal.App.4th at p. 1005.) A demurrer may be asserted only by the party against whom the complaint was filed. (Code Civ. Proc., § 430.10; *Patrick, supra,* 167 Cal.App.4th at p. 1005.) The complaint "is filed on the [company's] behalf; not against it. [Citations.]" (167 Cal.App.4th at p. 1004.)

[13] We focus our conflict analysis solely on the demurrer hearing. Though there is evidence that Kurtz may have jointly represented Markowitz and the limited liability companies at a

### D. *The rule of automatic disqualification applies.*

Blue Water argues that Kurtz is subject to automatic disqualification because he concurrently represented Markowitz and the limited liability companies. In contrast, Markowitz argues that Kurtz's representation was successive and the motion to disqualify was properly denied based on delay.

We agree with Blue Water.

 It is true that Kurtz's representation of the limited liability companies was fleeting, and that there was no evidence that he was continuing to represent them at the time of the hearing on the motion to disqualify. But according to *Flatt*, "[s]o inviolate is the duty of loyalty to an existing client that not even by withdrawing from the relationship can an attorney evade it." (*Flatt, supra,* 9 Cal.4th at p. 288.) Thus, "a law firm that knowingly undertakes adverse concurrent representation may not avoid [automatic] disqualification by withdrawing from the representation of the less favored client before [the] hearing. [Citations.]" (*Truck, supra,* 6 Cal.App.4th at p. 1057.) The undisputed facts establish that Kurtz knowingly agreed to represent conflicting interests at the demurrer hearing. He therefore cannot avoid the rule of automatic disqualification. Consequently, we need not reach the issue of delay.

There is authority for the proposition that "prior to an adjudication that the corporation is entitled to relief against its officers, or directors, the same attorney may represent both. [Citation.]" (*Jacuzzi v. Jacuzzi Bros., Inc.* (1966) 243 Cal.App.2d 1, 36 [52 Cal.Rptr. 147] (*Jacuzzi*).) But, as pointed out by the court in *Forrest*, "*Jacuzzi* has been criticized as illogical and against the weight of authority. [Citations.]" (*Forrest, supra,* 58 Cal.App.4th at p. 75.) Like the *Forrest* court, we decline to follow the lead of *Jacuzzi* because it purports to permit an attorney with an actual conflict to jointly represent a corporation and its insiders even absent a conflict waiver. Such a result is directly contrary to rule 3-310 and rule 3-600.

The next issue is whether Kurtz must be disqualified from the entire case or only from representing the limited liability companies. The court in *Forrest* held that even in instances where an attorney must be disqualified from jointly representing several corporations and insiders who allegedly defrauded the corporations, the attorney could continue to represent the

---

summary judgment hearing, the relevant papers and transcripts are not in the appellate record. We are therefore unable to discern whether Kurtz represented adverse clients at that hearing.

insiders. (*Forrest, supra,* 58 Cal.App.4th at p. 80.) The *Forrest* court distinguished *Flatt* and *Truck* because they did not involve a shareholder's derivative action and pointed out that neither case specifically held that an attorney is required to cease representing both clients. In addition, *Forrest* surveyed federal case law as well as commentary published in law review journals and noted that they supported a rule of permitting an attorney to continue representing the insiders. (*Forrest, supra,* 58 Cal.App.4th at pp. 80–81.)

██ The complaining party in *Forrest* argued that the trial court's order allowing the attorney to represent the insiders essentially converted the corporations to former clients and, as a logical consequence, authorized a violation of rule 3-310(E) because the order allowed the representation without a conflict waiver. The court disagreed. It pointed out that the rule requiring disqualification if there is a substantial relationship between successive representations of clients "is based on the need to protect scrupulously against the improper use of confidential information." (*Forrest, supra,* 58 Cal.App.4th at p. 82.) Consequently, the court stated: "Where, as here, the functioning of the corporation has been so intertwined with the individual defendants that any distinction between them is entirely fictional, and the sole repositories of corporate information to which the attorney has had access are the individual clients, application of the 'former client' rule would be meaningless." (*Ibid.*)

IV. *Future representation of the limited liability companies.*

██ The limited liability companies may wish to take an active role in the litigation. If so, the weight of authority indicates that the limited liability companies must obtain independent counsel. *Forrest,* for example, cited *Messing v. FDI, Inc.* (D.N.J. 1977) 439 F.Supp. 776, a federal case which explained that some authorities opine that a corporation in a derivative action should retain independent counsel if it elects to take an active role in the litigation, and other authorities opine that a corporation in a derivative action must always retain independent counsel. The court went on to hold as follows: "[B]ecause in the instant case the directors have been accused of fraud and the corporation has elected to take an active stance in the litigation, it is enough for now to decide that, under these combined circumstances, the corporation must retain independent counsel." (*Id.* at p. 782.)

We conclude that neither side can be trusted to make decisions on behalf of the limited liability companies. Therefore, if the limited liability companies elect to take an active role in the litigation, they must retain counsel with no past or present relationship with Blue Water or Markowitz.

## DISPOSITION

The order is reversed in part and affirmed in part. Kurtz is ordered disqualified from representing the limited liability companies in this matter but may continue to represent Markowitz.

The parties shall bear their own costs on appeal.

Doi Todd, Acting P. J., and Chavez, J., concurred.

The petition for a rehearing was denied February 25, 2011.