Filed 5/17/21  Disability Services Corp. v. Butterfield CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DISABILITY SERVICES CORPORATION,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DAVID A. BUTTERFIELD et al.,<br><br>Defendants and Appellants. | B303789<br>(Los Angeles County<br>Super. Ct. Nos. 18PSCV00187,<br>19PSCV00064)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

THE COURT:*

It is ordered that the opinion filed herein on April 20, 2021, be modified as follows:

1.  On page 3, line 14, change DCS to DSC

2.  On page 10, line 17, change DCS to DSC

3.  On page 11, line 11, change DCS to DSC.

4.  On page 11, line 24, change DCS to DSC.

5.  On page 12, line 3, change DFS to DSC.

6.  On page 12, line 16, change DCS to DSC.

7.  On page 12, line 17, change DCS's to DSC's.

8. On page 16, line 1, change DCS to DSC.

9. On page 16, footnote 9, change DCS to DSC.

10. On page 22, the DISPOSITION is modified as follows:

The order in *DSC v. Christopher Grant, et al.* (L.A.S.C. case No. 18PSCV00187, granting the summary judgment is affirmed. The order in *DSC v. David Butterfield, et al*. (L.A.S.C. case No. 19PSCV00064) granting the motion to disqualify Flyer from representing DSC's board members Butterfield and Fundenberg is affirmed. The parties shall bear their own costs on appeal.

This modification effects no change in the judgment.

---

*WILLHITE, Acting P. J.     COLLINS, J.          CURREY, J.

2

Filed 4/20/21  Disability Services Corp. v. Butterfield CA2/4 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DISABILITY SERVICES CORPORATION,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID A. BUTTERFIELD et al.,<br><br>    Defendants and Appellants. | B303789<br>(Los Angeles County<br> Super. Ct. Nos. 18PSCV00187,<br> 19PSCV00064) |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Gloria White-Brown, Judge.  Affirmed.

Flyer and Flyer, David R. Flyer and Raquel Flyer Dachner for Defendants and Appellants David A. Butterfield and Louise Fundenberg.

Christopher Grant, in pro. per., for Defendant and Appellant Christopher Grant.

Abrams Garfinkel Margolis & Bergson, Kenneth F. Spencer, Joshua M. Webster and Michael J. Weiss for Plaintiff and Respondent.

These consolidated appeals concern two competing lawsuits brought in the name of a nonprofit charitable organization, Disability Services Corporation (DSC). The cases arise from a struggle between two rival factions of DSC's board of directors (board) to control the corporation. In each of the two actions, one rival faction engaged separate counsel to file suit against the other rival faction for malfeasance in the management of DSC's assets. Neither action is a shareholder derivative suit; in both DSC sues one board or the other in its individual corporate capacity.

The first case is *DSC v. Christopher Grant, et al.* (L.A.S.C. case No. 18PSCV00187, hereafter Case No. 18). It was filed on DSC's behalf by the law firm Flyer and Flyer, and attorney David Flyer (collectively Flyer or Flyer's firm). The complaint alleged that Christopher Grant and three other members of DSC's board (the Grant board) violated DSC's bylaws by, among other things, improperly reconstituting DSC's board and creating false documents in order to misuse the entity's offices and charitable funds. The trial court granted summary judgment in favor of DSC and against Grant, who was in pro. per. and was the only defendant to answer the complaint. Grant now appeals in pro. per. from the summary judgment in Case No. 18.

The second case, *DSC v. David Butterfield, et al.* (L.A.S.C. case No. 19PSCV00064, hereafter Case No. 19), was filed on DSC's behalf by attorney Michael Weiss and his firm, Abrams Garfinkel Margolis & Bergson. The complaint in Case No. 19 alleged that David Butterfield (then-president of DSC's board) engaged in the unauthorized use of DSC funds to purchase personal items and to hire and pay himself, his friends, and his family members. As individual defendants in this case, Butterfield and another board member, Louise Fundenberg, were represented by Flyer. As noted, Flyer was also counsel for DSC in Case No. 18 against the Grant board.

2

Because of this simultaneous representation, the trial court granted a motion to disqualify Flyer from representing Butterfield and Fundenberg in Case No. 19. Butterfield and Fundenberg appeal from this disqualification ruling in Case No. 19.

For reasons explained below, we affirm both of the trial court's rulings.

## FACTUAL AND PROCEDURAL BACKGROUND

DSC is a non-profit organization formed in 1960 principally to serve the needs of children with learning disabilities. In October 2017, Butterfield was appointed president of DSC's board. At that time, DSC's bank accounts contained at least $350,000 from a charitable donation made to the organization.

*Case No. 18: DSC v. the Grant Board*

On December 17, 2018, Flyer filed Case No. 18 on behalf of DSC against the Grant board. The case was authorized on DCS's behalf by Butterfield. Five causes of action were alleged: fraud, breach of fiduciary duty, conversion, money had and received, and commercial unlawful detainer. The complaint alleged that in early November 2018, in violation of DSC's bylaws, the Grant board conducted a secret meeting without notifying or providing access to Butterfield and two other members of DSC's eight-member board.[1]

It was further alleged that the Grant board "created phony corporate documents which purportedly authorized them to perform official duties on behalf of [DSC]." After filing the documents with the California Secretary of

---

[1] Paul Smith, the eighth board member, resigned on November 6, 2018 and is not a party in either action.

3

State, the Grant board allegedly "took over [DSC's] offices," withdrew approximately $178,000 from DSC's bank accounts (which they diverted to non-charitable purposes) and refused DSC's demand to return the funds.

*Case No. 19:  DSC v. Butterfield and Fundenberg*

On January 18, 2019, represented by attorney Michael Weiss and his firm, Abrams Garfinkel Margolis & Bergson law firm, DSC filed Case No. 19 against Butterfield and Fundenberg.[2]  The case was authorized on DSC's behalf by the Grant board.  As defendants in this lawsuit, Butterfield and Fundenberg were represented by Flyer (who was also representing DSC as the plaintiff in Case No. 18 against the Grant board).

As pertinent here, the complaint alleged claims for breach of fiduciary duty, conversion, and common counts for money had and received and accounting.[3]  DSC alleged that, after he was appointed board president, Butterfield engaged in misconduct in violation of DSC's bylaws by, among other things, using DSC funds to buy a car and pay unauthorized tax-free wages to himself, his friends and his family members, and using DSC credit cards to pay for personal items and services.  The complaint also alleged that Butterfield wrongfully denied the Grant board access to DSC business records and likely embezzled DSC's funds.

DSC claimed that, on or about November 4, 2018, the Grant board became aware of Butterfield's misdeeds.  They called an emergency special board meeting for November 6, 2018 to address Butterfield's misconduct and,

---

[2]      Fundenberg was added by amendment as a Doe defendant, along with California's then Attorney General, Xavier Becerra.  The Attorney General has not been involved in the litigation.

[3]      Claims for fraud and declaratory relief were dismissed.

4

on that date, voted to remove him from DSC's board. Butterfield was notified of his removal and instructed to return all DSC property.

To prevent Butterfield from engaging in further malfeasance, one member of the Grant board ordered that the locks be changed on DSC's offices. In addition, the Grant board, concerned that Butterfield retained access to DSC bank accounts, withdrew $177,818.39 from DSC's accounts. On November 19, 2018, after Butterfield refused to accept his removal, the Grant board filed an amended Statement of Information form with the Secretary of State removing Butterfield as an officer of DSC.

Finally, DSC alleged that after Butterfield's removal from the DSC board, attorney Flyer, in violation of the Rules of Professional Conduct, rules 1.7 and 1.13, actively assisted Butterfield in engaging in various wrongful acts in an effort to regain control of DSC and the remaining charitable funds. Those acts included the filing of Case No. 18 in DSC's name against the Grant board. They also included the filing of a fraudulent Statement of Information with the Secretary of State that named Butterfield as DSC's chief executive officer and that purported to remove the Grant board members from DSC's board.

*Case No. 19: First Motion to Disqualify*

Flyer was simultaneously representing: (1) plaintiff DSC in Case No. 18 against the rival Grant board, in which the Grant board was charged with corporate malfeasance, and (2) defendants Butterfield and Fundenberg in Case No. 19, in which Butterfield and Fundenberg were charged with competing acts of corporate malfeasance.

On April 10, 2019, in Case No. 19, DSC filed its initial motion to disqualify (MTD) Flyer from representing Butterfield and Fundenberg as

5

defendants in Case No. 19. In the MTD, DSC argued that "in an act of pure malice and retaliation, and without standing to do so," Butterfield instructed Flyer to commence Case No. 18 on behalf of DSC against the Grant board. In filing and pursuing Case No. 18, Flyer allegedly also engaged in improper simultaneous representation of DSC as the plaintiff in Case No. 18, and of individual defendants Butterfield and Fundenberg in Case No. 19.

In opposition, Butterfield and Fundenberg argued DSC lacked standing to sue, because the Grant board had no authority to authorize such action. They also asserted that minutes of a January 20, 2019 meeting of DSC's true board reflected a vote "rescinding" Weiss's authority to prosecute Case No. 19 on DSC's behalf. Instead, the board retained Flyer's firm to represent Butterfield and Fundenberg in that action. Finally, Butterfield and Fundenberg argued that the Weiss declaration submitted in support of the MTD presented no admissible evidence of wrongdoing by Butterfield or Flyer.

On July 17, 2019, the MTD was argued. The court found DSC had failed to present admissible evidence of "adverse, conflicting interests" between DSC on the one hand, and Butterfield and Fundenberg on the other, and denied the motion without prejudice.

*Case No. 19: Renewed Motion to Disqualify*

On August 28, 2019, DSC filed a second MTD in Case No. 19, largely reiterating its earlier arguments, supported by the declarations of Grant and Weiss. DSC also informed the trial court that, in March 2018, Flyer had previously represented DSC in a federal action.

In opposition to the second MTD, Butterfield and Fundenberg argued: (1) DSC lacked standing to seek Flyer's disqualification, (2) an attorney could properly represent an entity and its agent where, as here, there was no

6

conflict of interest, and (3) DSC's board had investigated the matter and determined there was no actual conflict of interest.

On November 5, 2019, at the hearing on the second MTD, the trial court expressed its "belie[f] that there probably [was] a conflict of interest" in Flyer's simultaneous representation of DSC as plaintiff in Case No. 18, and Butterfield and Fundenberg as defendant's in Case No. 19. However, the court found again that Grant had failed to submit competent evidence to support a finding that a conflict in fact existed. On its own motion, the court continued the hearing to permit Grant to produce admissible evidence showing the existence of adverse, conflicting interests.

Grant and Weiss submitted supplemental declarations. The declarations were accompanied by "timesheets" that Butterfield and his friends and family members presented to DSC in fall 2018. The declarations were also accompanied by copies of bank statements and approximately 50 checks reflecting payments of over $29,000 made by DSC to these individuals. Many checks contained the designations "payroll" and "hours," but no tax or other withholdings had been taken from wages paid. DSC also submitted evidence of cash withdrawals Butterfield made for personal use. Finally, DSC submitted a copy of a March 2018 agreement by which DSC had retained Flyer to represent it in a prior action in federal court.

The trial court found this evidence sufficient to support the allegation that Butterfield had "hired and paid employees without the Board's authorization in violation of DSC's bylaws." This evidence was "significant because it demonstrate[d] that a conflict between DSC and its former president, . . . Butterfield, ha[d] arisen." As such, the court concluded that

7

Flyer was disqualified from representing Butterfield and Fundenberg in Case No. 19, and granted the MTD.[4]

Butterfield and Fundenberg appeal from the order disqualifying Flyer from representing them.[5] In their opening brief, they state that the parties agreed to stay Case No. 19 pending the outcome of this appeal.

*Case No. 18—Motion for Summary Judgment*

In April 2020, in Case No. 18, DSC (represented by Flyer) filed a "Motion for Summary Judgment," supported by six declarations from DSC board members, and a declaration from an attorney in Flyer's firm. DSC also filed a "Separate Statement in Support of [the motion for summary judgment]," and a Request for Judicial Notice.

DSC argued that undisputed evidence established that the Grant board had breached its fiduciary duties, committed conversion, and improperly retained funds intended for DSC's benefit. The gist of DSC's motion was that the Grant board members breached their fiduciary duties by failing to provide notice of or access to the November 6, 2018 special meeting to Butterfield and Fundenberg and two other board members, as required by DSC's bylaws and California law. As a result, Butterfield and Fundenberg

---

[4]     The trial court's order states Flyer was disqualified from representing DSC. However, at the hearing on the second MTD, the court clarified that Flyer was disqualified from representing defendants Butterfield and Fundenberg. The court, which had not yet ruled on the motion for summary judgment, left for another day the determination whether Flyer also was disqualified from representing DSC. The record does not indicate whether or how the trial court resolved this issue.

[5]     An order granting a motion to disqualify counsel based on an alleged conflict of interest is an appealable order. (See *Machado v. Superior Court* (2007) 148 Cal.App.4th 875, 882; *McMillan v. Shadow Ridge at Oak Park Homeowner's Assn.* (2008) 165 Cal.App.4th 960, 964.)

8

argued that all actions taken by Grant board at and after the November 6, 2018 meeting were unauthorized and invalid. Those invalid actions included the Grant board's creation of improper authorization documents filed with the Secretary of State, withdrawal of approximately $178,000 from DSC's bank accounts, assumption of control over DSC's offices for three months, conversion of DSC property contained therein, and unauthorized retention of and payments to Weiss's firm.

Grant, the only defendant in Case No. 18 to answer the complaint, opposed the summary judgment motion. On April 28, 2020, Grant (who has been self-represented throughout this litigation), filed a document entitled "Objection to [DSC's] Motion for Summary Judgment" (Objection). Grant did not submit a separate statement.

The hearing on the motion for summary judgment began on June 25, 2020. The trial court observed that Grant's Objection did not comply with the requirements of the California Rules of Court, rule 3.1354(b) regarding objections to evidence. Nevertheless, on its own motion, the court agreed to construe Grant's Objection as his points and authorities in opposition to the motion for summary judgment. On its own motion, the court also continued the hearing to August 12, 2020 and directed Grant to file a separate statement by July 10, 2020.

On July 9, 2020, Grant filed a separate statement that disputed and or objected to the majority of DSC's 49 purportedly undisputed facts.[6] However, Grant presented no additional disputed facts. Grant also submitted a 169-

---

[6] Notably, Grant did not dispute that DSC is governed by its bylaws, and that he, like the other members of DSC's board on November 4, 2018, owed fiduciary duties to DSC. He also did not dispute that the Grant board filed documents with the secretary of state after November 6, 2018, or that Grant board removed equipment from DSC's offices.

9

page "Response" to DSC's motion for summary judgment which included declarations from each Grant board member and 26 exhibits.  On July 17, 2020, DSC filed its supplemental reply and objections to Grant's declaration.

The summary judgment motion was argued on August 12, 2020.  The trial court considered Grant's Objection and separate statement.  However, the court declined to consider Grant's voluminous July 9, 2020 "Response" because it "exceed[ed] the scope of the court's June 25, 2020 minute order." Addressing the merits, the trial court found that DSC satisfied its initial burden of proof, but Grant failed to present evidence demonstrating the existence of a material factual dispute.  The motion was granted, and judgment subsequently entered in favor of DSC for $14,016.35.  Grant timely appealed.  We granted Butterfield's request to consolidate the two appeals.

## DISCUSSION

### I. *Case No. 19: The Motion to Disqualify*

Butterfield and Fundenberg argue that the trial court erred when it disqualified Flyer from representing them in Case No. 19.  They maintain that (1) DCS lacked standing to have Flyer disqualified, because the Grant board lacked authority to initiate such action in Case No. 19 on DSC's behalf, (2) in light of the court's grant of summary judgment in Case No. 18, the doctrine of collateral estoppel requires reversal of the order disqualifying Flyer in Case No. 19, and (3) the evidence and law do not support Flyer's disqualification in Case No. 19.  We reject these contentions.

*The Standard of Review*

Broadly speaking, a trial court's decision on a disqualification motion is reviewed for abuse of discretion.  (*Doe v. Yim* (2020) 55 Cal.App.5th 573, 581.)

10

Under this standard, we review the court's legal conclusions de novo, and review its factual findings for the existence of substantial supporting evidence. (*Ibid.*) If substantial evidence supports the trial court's factual findings, we review its conclusions based on those findings for abuse of discretion. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712 (*Haraguchi*); *Bridgepoint Construction Services, Inc. v. Newton* (2018) 26 Cal.App.5th 966, 969 (*Bridgepoint*).)

A. *Standing to Seek Flyer's Disqualification*

We reject Butterfield and Fundenberg's argument that the Grant board members were no longer "true" members of DSC's board, and that therefore DCS had no standing in Case No. 19 to bring a motion in DSC's name to disqualify Flyer. "A complaining party who files a motion to disqualify is required to have standing." (*Blue Water Sunset, LLC v. Markowitz* (2011) 192 Cal.App.4th 477, 485 (*Blue Water*).) Standing may be conferred if the complaining party has a past or present attorney-client relationship with the attorney targeted by the motion. (*Id.* at p. 487 ["[i]f an attorney simultaneously represents two clients with adverse interests, automatic disqualification is the rule"].)

Here, DSC as plaintiff in Case Nos. 18 was represented by Flyer. Having a present attorney-client relationship with Flyer in Case No. 18, DSC had standing in Case No. 19 to move to disqualify him based on his simultaneous representation of Butterfield and Fundenberg as defendants in Case No. 19.

Insofar as Butterfield and Fundenberg contend that DCS had no such standing, their argument is misplaced. They assert that the Grant board members had been voted off the board on November 29, 2018; that those

11

members had no authority to authorize legal action on DSC's behalf; and that that therefore DSC lacked standing to seek Flyer's disqualification. However, this argument does not actually challenge DFS's standing. It involves the issue, hotly contested at the time of the motion to disqualify, of which of the competing boards could exercise corporate authority. That issue was an essential issue to be litigated in the two pending lawsuits, and it gave rise to Flyer's conflict of interest in the first place: simultaneously representing clients with competing interests.

In any event, as we explain in our discussion of the merits of the court's ruling, the court, on substantial evidence, concluded that the evidence established DSC's standing.

B. *Collateral Estoppel*

In Case No. 18, the trial court granted summary judgment on DSC's complaint against the Grant board. The court found, in substance, that Grant raised no triable issue of fact to dispute that the Grant board's purported take-over of DCS and later actions, as alleged in the complaint, violated DCS's bylaws and the California Corporations Code. In our discussion of Grant's appeal from the ruling, in part II of our opinion, we affirm the ruling.

However, we disagree with Butterfield and Fundenberg that under the doctrine of collateral estoppel, the summary judgment in Case No. 18 requires reversal of the trial court's disqualification ruling in Case No. 19. The doctrine of collateral estoppel operates to prevent the relitigation of issues previously adjudicated in another action. (*In re Marriage of Furie* (2017) 16 Cal.App.5th 816, 827–828.) The test for the application of the doctrine requires, among other things, that the issue be identical to the one

12

sought to be relitigated, which was necessarily decided in a prior action. (*Ibid.*; *Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 82.) At the time the trial court ordered Flyer disqualified, both Case Nos. 18 and 19 were pending. The issue decided by the motion to disqualify in Case No. 19 did not address the merits of the two lawsuits and the question who had corporate control, but whether in the two competing lawsuits yet to be litigated, Flyer was simultaneously representing multiple clients who had adverse interests. That was not the issue decided by the grant of summary judgment. Of course, DSC's summary judgment motion had not yet been filed, let alone ruled on. Moreover, the later grant of summary judgment against Grant in Case No. 18 did not obviate Flyer's simultaneous representation of clients with adverse interests in Case Nos. 18 and 19, before the summary judgment.[7]

D. *The Disqualification Ruling*

As we have noted, "it is a violation of the duty of loyalty for the attorney to assume a position adverse or antagonistic to his or her client without the client's free and intelligent consent given after full knowledge of all the facts and circumstances. [Citation.]" (*State Farm Mutual Automobile Ins. Co. v. Federal Ins. Co.* (1999) 72 Cal.App.4th 1422, 1431.)

In *Forrest v. Baeza* (1997) 58 Cal.App.4th 65, the court observed that, in contrast to cases involving successive representation of clients with potentially adverse interests, "'[t]he primary value at stake in cases of simultaneous or dual representation is the attorney's duty—and the client's legitimate expectation—of *loyalty*, rather than confidentiality.' (*Flatt v.*

---

[7] Because we resolve the contention on this basis, we need not decide whether the other required elements of collateral estoppel are met.

13

*Superior Court* [(1994)] 9 Cal.4th [275] at p. 284.) "'[R]epresentation adverse to a *present* client must be measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients.'" [Citation.] [¶] '[I]n all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or "automatic" one. [Citations.] [¶] . . . The strict proscription against dual representation of clients with adverse interests thus derives from a concern with protecting the integrity of the attorney-client relationship rather than from concerns with the risk of specific acts of disloyalty or diminution of the quality of the attorney's representation." (*Forrest, supra*, at p. 74.)

Here, in support of its request for Flyer's disqualification, DSC presented evidence that its board lacked a signed retainer with Flyer's firm. DSC also presented copies of 50 checks signed by Butterfield between July 2018 and 2019, evidencing tax-free salary and wage payments of over $29,000 to Butterfield and his family members and friends. It also presented evidence that Butterfield hired and paid these individuals without authorization and in violation of DSC's bylaws.

The court found this that this evidence "demonstrate[d] that a conflict between DSC and its former president, . . . Butterfield, ha[d] arisen. As such, [Flyer] [was] not [permitted to] represent both DSC and . . . Butterfield."[8]

_____

[8] The court rejected, for lack of foundation, testimony by Butterfield's expert CPA, Alan Lurie, who opined that, based on his investigation of DSC's financial records, Butterfield was a DSC employee, and that the recipients of the checks for "hours" and "payroll" were independent contractors. The court also rejected Butterfield's declaration regarding purportedly authorized payments made by DSC to him and others as employees or independent contractors, concluding the evidence was insufficient to overcome DSC's showing that the wage payments were unauthorized.

Butterfield also takes issue with the trial court's evidentiary rulings as to portions of declarations Weiss and Grant submitted in support of the MTD. With respect to Weiss, Butterfield's overruled objections relate primarily to Weiss's

14

The trial court rejected Butterfield's representation that he was an employee of DSC in January 2019, that another board member had approved one individual's employment, and two others had worked as independent contractors.

The trial court's factual findings are supported by substantial evidence (the evidence submitted by DSC), and buttressed by the court's credibility findings (rejecting Butterfield's evidence). Therefore, we review the court's disqualification of Flyer premised on those findings for abuse of discretion. (See *Haraguchi, supra,* 43 Cal.4th at pp. 711–712; *Bridgepoint, supra,* 26 Cal.App.5th at p. 969.)

On the facts as found by the court, the court reasonably concluded that Flyer was disqualified from representing both DSC as plaintiff in Case No. 18 and individual defendants Butterfield and Fundenberg being sued by DSC in Case No. 19. In short, Flyer was simultaneously representing clients with adverse interests: in Case No. 18, he represented DSC in its action against the Grant board; in Case No. 19, he represented Butterfield and Fundenberg,

opinions, hyperbole and purportedly insulting behavior toward Flyer. This is a nonissue. The court's legal conclusion was not premised on any representation in Weiss's declarations.

We also reject Butterfield's assertion of error as to the trial court's rulings on objections to portions of Grant's initial and supplemental declarations. First, the ruling reflects the court found that any problems regarding Grant's initial failure to submit sufficient evidence of Flyer's conflict were cured by corroborating evidence submitted with his supplemental filing. Butterfield's assertion that Grant lacked authority to opine on the propriety of Butterfield's actions because Grant was no longer on DSC's board misses the point. At issue was DSC's contention that Flyer simultaneously represented parties with conflicting interests. As discussed above, the record contains overwhelming evidence that he did and was properly disqualified. The appellate court reviews a trial court's rulings on evidentiary objections for abuse of discretion. (*Mackey v. Trustees of California State University* (2019) 31 Cal.App.5th 640, 657.) Butterfield has fallen far short of satisfying his "burden of establishing the court exceeded the bounds of reason." (*Ibid.*)

rivals of the Grant board, in DCS's action against them. Where, as here, a member of a company's board is accused of wrongdoing, the same attorney may not represent both the corporation and the accused board member, nor may the company's directors waive the inherent conflict of interest. (See *Blue Water, supra,* 192 Cal.App.4th at pp. 486–487 [the same law firm may not represent a company and company insiders alleged to have committed fraud whose interests are adverse and conflicting]; *Gong v. RFG Oil, Inc.* (2008) 166 Cal.App.4th 209, 214–215.) The trial court did not abuse its discretion in disqualifying Flyer from representing Butterfield and Fundenberg as defendants in Case No. 19, based on the conflict of interest created by his simultaneous representation of DSC as plaintiff in Case No. 18.[9]

II. *Case No. 18*: *Summary Judgment*

A. *Standard of Review and Controlling Law*

The fundamental purpose of a summary judgment motion is to provide the trial court a mechanism to cut through the parties' pleadings and determine whether material factual issues exist such that a trial is necessary to resolve the dispute. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843; *Yanez v. Plummer* (2013) 221 Cal.App.4th 180, 186.)

To that end, a basic requirement is that the papers supporting a motion for summary judgment "shall include a separate statement setting forth plainly and concisely all material facts that the moving party contends are undisputed." (Code Civ. Proc., § 437c, subd. (b)(1).) Each material fact in the separate statement must be accompanied by reference to the evidence

---

[9]    That the trial court did not expressly find a "conflict" in Flyer's representation of Fundenberg is of no moment. Flyer's representation of Fundenberg posed the same problem as his representation of Butterfield: like Butterfield, in Case No. 19, Fundenberg's interests as a defendant were contrary to those of DCS in Case No. 18 seeking damages against her and Butterfield.

16

supporting that fact. (*Ibid*.) "The separate statement is not merely a technical requirement, it is an indispensable part of the summary judgment or adjudication process," and "failure to comply with this requirement sufficient grounds to grant the motion." (*Whitehead v. Habig* (2008) 163 Cal.App.4th 896, 902.)

Similarly, a party opposing a motion for summary judgment must file its own "separate statement that responds to each of the material facts contended by the moving party to be undisputed, indicating if the opposing party agrees or disagrees that those facts are undisputed. The statement also shall set forth plainly and concisely any other material facts the opposing party contends are disputed[,] . . . followed by a reference to the supporting evidence. *Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion*." (Code Civil Proc., § 437c, subd. (b)(3), italics added; see also Cal. Rules of Court, rule 3.1350(e)(2).) "'We review the ruling on a motion for summary judgment de novo, applying the same standard as the trial court.' [Citation.]" (*Barenborg v. Sigma Alpha Epsilon Fraternity* (2019) 33 Cal.App.5th 70, 76.)

*Grant's Separate Statement*

Grant maintains the court erred not considering his "July 9th responding Separate Statement [because it] exceeded the scope of the court's June 25, 2020 minute order." Grant misstates the trial court's ruling. The trial court did consider the separate statement Grant submitted on July 9. What the court declined to consider was Grant's belated 169-page "Response" to DSC's motion for summary judgment, which included declarations from each Grant board member and 26 exhibits.

17

In any event, the trial court did not err in refusing to consider Grant's "Response." The court exercised its discretion to construe Grant's inappropriate "Objection to [DSC's] Motion for Summary Judgement," as what he should have filed, an "opposing memorandum of points and authorities." Further, after admonishing Grant that, as a self-represented party, he was held to the same standard as an attorney, the court also continued the hearing to give him additional time to file a compliant separate statement. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 985 [Pro. per. litigants are held to the same standards as attorneys]). The court's June 25 order did not afford Grant carte blanche to submit additional briefing or a voluminous mass of undifferentiated evidence, and the court was not required to consider it. (Cf., *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 252 [observing that summary judgment motion was plagued by "reply papers [that] included a 297-page reply separate statement," which is not provided for by statute].)

B. *Summary Judgment*

The trial court found DSC satisfied its burden and was entitled to summary judgment based on the following.

It is undisputed that DSC is governed by bylaws. Section 11 of DSC's bylaws requires that:

"b) Special meetings of the Board shall be held upon seven (7) days' notice by first-class mail or forty-eight (48) hours' notice delivered personally or by telephone or by email. . . . Such notices shall be addressed to *each Director* at his or her address . . . . Notice shall be given of any . . . special meeting to Directors absent from the original meeting. . . .

18

"c) *Notice of meetings shall specify the place, day, and hour of the meeting. The purpose of any Board meeting shall be specified in the notice.*" (Italics added.)

On November 4, 2018, DSC's eight-member board was comprised of the four Grant board members, Butterfield, Fundenberg, Durand and Smith (who resigned). The evidence showed that Durand been excused from attending some meetings but remained qualified to vote. Fundenberg had been ill and unable to attend board meetings the two preceding months. However, she participated in the November 4, 2018 board meeting and resumed her position as treasurer.

Grant concedes that he, like the other members of DSC's board on November 4, 2018, owed fiduciary duties to DSC. On November 6, 2018, the four Grant board members conducted a special meeting. In violation of DSC's bylaws, Durand, Butterfield and Fundenberg were not provided notice of the November 6, 2018 meeting, and Butterfield and Fundenberg were denied access to that meeting. Corporations Code section 307, subdivision (a)(2) mandates that a corporation's "*bylaws may not dispense with notice of a special meeting.*" (Italics added.)

On November 8, 2018, the Grant board members withdrew substantial funds from DSC's accounts and created a new Statement of Information, which they filed with the Secretary of State and used to open new bank accounts on behalf of DSC. The Grant board members assumed control of DSC's offices and used the entity's funds to change locks, purchase computers and other property, and to retain Weiss's firm to represent DSC in a case against Butterfield. Grant concedes that the Grant board members filed documents with the secretary of state after the meeting on November 6, 2018 on behalf of DSC and that they removed equipment from DSC's offices. The

19

record of the summary judgment motion contains no indication that the Grant board members were authorized to file a new Statement of Information on behalf of DSC, or to retain Weiss's firm.

California law provides that "[s]pecial meetings of the board shall be held upon four days' notice by mail or 48 hours' notice delivered personally or by telephone . . . . The articles or bylaws may not dispense with notice of a special meeting." (Corp. Code, § 307, subd. (a)(2); see also *Grant v. Hartman Ranch Co.* (1961) 193 Cal.App.2d 497, 501 [holding that defective notice rendered board meeting invalid]; *Thompson v. Williams* (1888) 76 Cal. 153, 154–155 ["Each director must have special notice of the regular meetings of the board of directors of the corporation defendant," and actions taken in the absence of such notice and nonattending board members are "without authority and . . . a nullity"].) DSC concedes that the Grant board members failed to notify the remaining board members. As a result, the court found that actions taken by the Grant board members taken at and after the November 6, 2018 meeting on DSC's behalf were invalid.

DSC also presented undisputed evidence it suffered damages of $6,600 (three months' rent), about $5,900 in DSC funds improperly used to pay Weiss, and $1,500 for office equipment the Grant board members never returned. On this record, the trial court found DSC met its initial burden of proof.

The court rejected Grant's contention that the board had only six members on November 6, 2018 (the Grant board members, Smith and Butterfield), because Fundenberg and Durand were no longer members of DSC's board. It found the evidence showed Fundenberg had indicated an intention to resign from the board by that date, not that she actually had

20

done so.  Grant presented no evidence that Durand was no longer a board member.

The court also rejected Grant's assertion that all board members were notified of the November 6, 2018 meeting, because the document on which he relied was neither signed nor authenticated.  Further, the court observed that even if this evidence was admitted, the document would not constitute proper notice to Durand, who attended the November 4, 2018 meeting, and it was undisputed that Butterfield at least had been denied access to the November 6, 2018 telephonic meeting.

Grant does not challenge the trial court's findings that the Grant board members failed to provide notice to other board members, nor that they were required to do so.  Instead, without citation to supporting authority, Grant simply asserts the bylaws do not require the provision of notice to "a Board member whose actions are subject to Executive Committee or Board review and/or action, [nor do they] afford[] the opportunity to participate in meetings at which their actions are considered."  However, DSC's bylaws and California law provide otherwise.  (See Corp. Code, § 307, subd. (a)(2).)  Because notice to all board members of the November 6, 2018 special meeting was required, but concededly not provided, actions taken by the Grant board members at and after the November 6, 2018 meeting were invalid.  Summary judgment was appropriate.

//

//

//

//

//

//

21

**DISPOSITION**

The order in *DSC v. Christopher Grant, et al.* (L.A.S.C. case No. 18PSCV00187, granting the motion to disqualify Flyer from representing DSC's board members Butterfield and Fundenberg is affirmed. The order in *DSC v. David Butterfield, et al.* (L.A.S.C. case No. 19PSCV00064) granting summary judgment is affirmed. The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.

We concur:


COLLINS, J.


CURREY J.


22